## JONES et al. v. MUTUAL FIDELITY CO.

### (Circuit Court, D. Delaware. May 26, 1903.)

### No. 230.

**1. CORPORATIONS—INSOLVENCY—APPOINTMENT OF RECEIVER.**

The Delaware statute of March 25, 1891 (19 Laws Del. c. 181), authorizing the Chancellor on the application of creditors or stockholders of insolvent corporations to appoint receivers to take charge of the property, business and affairs of such corporations, with power to collect debts, claims and property due and belonging to them, and to administer their affairs, such receivership to be continued so long as the Chancellor shall think necessary, creates a purely equitable right and remedy which, other jurisdictional conditions existing, may be enforced by a bill filed on the equity side of a circuit court of the United States by unsecured creditors who have not reduced their claims to judgment, as well as by stockholders or judgment creditors.

**2. COURTS—JURISDICTIONAL AMOUNT.**

The jurisdictional amount exists where the assets of an insolvent corporation proceeded against under the statute exceed, exclusive of interest and costs, the sum or value of $2,000, and the claims of the creditors joined in the bill in the aggregate exceed such jurisdictional amount, although no creditor has a claim or claims equal to that amount; and, further, the jurisdictional amount exists where the assets of such corporation exceed, exclusive of interest and costs, the sum or value of $2,000, although the claims of the creditors joined in the bill are not in the aggregate equal to that amount.

**3. CORPORATIONS—INSOLVENCY—RECEIVER.**

In the absence of statutory authority, the complainants, as general unsecured creditors at law, who have not reduced their claims to judgment, could not, solely on the ground of insolvency, successfully maintain their bill against the defendant to deprive it of the possession of its assets and secure their administration and distribution.

**4. SAME.**

The Delaware statute in conferring on the Chancellor authority, solely on the ground of insolvency, to appoint receivers for insolvent corporations and take possession of and fully and finally distribute their assets, provided a purely equitable procedure for the enforcement of equitable rights on the part of creditors and stockholders.

**5. SAME—RIGHTS OF UNSECURED CREDITORS.**

Under the settled construction of the statute its provisions apply as well to general unsecured creditors as to creditors whose claims have been reduced to judgment or otherwise judicially ascertained or are admitted; and in the absence of such a statute neither the court of chancery nor any other court in Delaware would at the instance of creditors have authority, solely on the ground of insolvency, to appoint a receiver to take charge of the affairs and collect and make final distribution of the assets of a Delaware corporation.

**6. FEDERAL COURTS—JURISDICTION.**

While a state law cannot confer jurisdiction on any federal court, it may create a substantial right which the proper federal court, otherwise possessing jurisdiction, may enforce by a proper remedy whether in equity, in admiralty, or at law.

**7. SAME—EQUITY PRACTICE.**

There is a fundamental distinction growing out of the federal constitution and legislation between legal and equitable procedure. The sev-

¶ 2. Jurisdiction of Circuit Courts as determined by the amount in controversy, see notes to Auer v. Lombard, 19 C. C. A. 75; Tennent Stribling Shoe Co. v. Roper, 36 C. C. A. 459.

¶ 3. See Corporations, vol. 12, Cent. Dig. § 2220.

enth amendment to the Constitution provides that "in suits at common law where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." Section 16 of the Judiciary Act of September 24, 1789 [1 Stat. 82], reproduced in section 723 of the Revised Statutes [U. S. Comp. St. 1901, p. 583], enacts that "suits in equity shall not be sustained in either of the courts of the United States in any case where a plain, adequate and complete remedy may be had at law." These constitutional and statutory provisions control the procedure of the federal courts; and the propriety of resorting in any given case to the law side of the court, on the one hand, or, on the other, to the equity side, must be determined with reference to them.

8. SAME—JURISDICTION AT LAW AND IN EQUITY.

So marked is· the distinction between the jurisdiction of the courts of the United States in equity and at law with respect to procedure, that the blending together in one suit in a federal court of essentially legal and equitable remedies cannot be authorized or justified by any state statute or practice on the subject; but, though no state legislation is competent to extend or restrict the jurisdiction of the federal courts, a state may create an enlargement of rights and remedies, whether equitable or legal, which may be enforced or pursued in a federal court, in the exercise of that branch of its jurisdiction which is appropriate to the case, and where a state statute creates a right and a remedy for its protection or enforcement, and such remedy substantially conforms to the procedure in chancery, it, in the absence of a plain, adequate and complete remedy at law, may be pursued on the equity side of a federal court. Where the direct object of a suit is the judicial ascertainment of the existence and amount of a pecuniary legal demand and the enforcement of its payment by the process of the court in which the suit is brought, the proceeding is essentially an action at law and in a federal court must be so treated, regardless of state legislation. Nor is the distinctively legal nature of such a remedy lost merely because, owing to the circumstances of a given case, the purpose of the action may fail of accomplishment. "The want of a remedy and the inability to obtain the fruits of a remedy are quite distinct."

9. EQUITY—JURISDICTION.

If a remedy is essentially legal and in its nature fitted or adapted, in the absence of obstacles, which may or may not exist, to attain the object in view, then, whatever equitable procedure may in particular cases be resorted to in aid of the legal remedy, it cannot wholly displace it. The jurisdiction of chancery to reach equitable or legal assets of a defendant, whether a corporation or a natural person, in aid of a legal remedy for a money demand is indisputable. But such an exercise of jurisdiction is not by way of substitution for, but only in aid of, the legal remedy, and it can be resorted to only after the plaintiff has exhausted such remedy. This necessitates the obtaining of judgment for the demand, and, usually, the issuance of execution and its return unsatisfied.

10. SAME—REMEDY AT LAW.

The fact that equitable relief can be granted in aid of a legal remedy only after the plaintiff has exhausted such remedy precludes the possibility of any clash or conflict between legal jurisdiction and equitable jurisdiction or of any blending of legal and equitable remedies in the same suit.

11. SAME.

There is a clear distinction between the exercise of equitable jurisdiction in aid of a legal remedy for the collection of a pecuniary legal demand, and the exercise of equitable jurisdiction in enforcing a purely equitable right by a purely equitable remedy, created by a valid state statute, not in aid of any legal remedy, but wholly independently thereof, though the existence of such equitable right and remedy may presuppose and be dependent on the existence of such pecuniary legal demand.

**12. SAME.**

The fact that a right may be cognizable at law by no means determines that it may not be cognizable in equity and serve as the basis for a purely equitable remedy; for in many cases a given demand or interest may constitute the foundation of a suit either at law or in equity, and whether the procedure shall be at law, on the one hand, or, on the other, in equity, absolutely depends on the object of the suit and the nature of the relief sought. If the procedure and relief are essentially equitable the circumstance that they bear relation to a legal demand is immaterial.

**13. SAME.**

Where the procedure and relief provided by a state statute are essentially equitable and such relief is impossible of attainment in any action at law, not owing to the existence of any accidental or abnormal obstacles or difficulties, but by reason of the essential nature of such action and legal process, a case for purely equitable cognizance under the statute is presented.

**14. SAME—AID OF LEGAL REMEDY.**

Where equitable rights and remedies under the statute, founded on or bearing relation to pecuniary legal demands, would be defeated by exhausting the remedy at law on such demands, such equitable remedies cannot be considered as in aid of the legal remedy. In such a case to enjoy the equitable rights and remedies provided by the statute it is necessary that the equity procedure therein authorized should be followed, without any exhaustion of the legal remedy, for being a purely equitable procedure the constitutional guaranty of jury trial would, of course, have no application.

**15. SAME—PROCEDURE.**

The fact that the equitable procedure provided by a state statute for the enforcement of a substantial equitable right created thereby does not in all respects correspond with the mere forms and modes of procedure usually observed in federal courts on their equity side, or that the enforcement of such new equitable right requires a modification of the accustomed procedure, not violative of established rules and principles, offers no bar to the prosecution in equity of such right in the federal courts.

**16. SAME.**

No action at law by a non-judgment creditor, nor any legal process on behalf of a judgment creditor, can enforce the right conferred by the statute. An exhaustion of the legal remedy for the collection of the pecuniary demands of complainants, proceeding under the statute, would not only fail to secure to them the relief prayed for, but necessarily deprive them of it. An application of the assets of the insolvent corporation to final process at law would be destructive of the right conferred by the statute. This is not a case in which equitable jurisdiction can be exercised only in aid of a legal remedy for the removal of obstacles, but, on the contrary, one in which, by reason of its object, the complainants, though non-judgment creditors, are pursuing ab initio a purely equitable remedy for the enforcement of a purely equitable right.

**17. ASSUMPSIT—MONEY HAD AND RECEIVED.**

Where an executory contract is void by a state statute, moneys paid on account of it by an innocent party may be recovered in assumpsit on the count for money had and received.

(Syllabus by the Court.)

In Equity.

Herbert H. Ward and Andrew C. Gray, for complainants.
David T. Marvel and R. Randolph Hicks, for defendant.

BRADFORD, District Judge. The questions for determination arise on a demurrer by the Mutual Fidelity Company, a corporation of

Delaware, to an amended bill of complaint brought against it by Calvin Jones and others, citizens of Tennessee, on behalf of themselves and all other creditors of the defendant who shall come in as parties complainant and contribute to the expense of the suit. The bill, among other things, alleges in effect that the complainants are creditors of the defendant and respectively are the owners and holders of certain certificates of investment and obligations of the defendant, known as "Eight Percent Investment Certificates" and "Diamond Investment Contracts," for which they have paid the defendant, and on account of which it is indebted to them in, sums exceeding in the aggregate $2,500; that the purpose of the defendant in procuring its charter was "to enable it to carry on the alleged business of issuing and selling certificates of investment and debentures on the partial payment or instalment plan"; that the certificates of investment and obligations on or with respect to which this suit was brought, by reason of certain payments thereon made by the complainants, have under their terms "matured and are due and payable"; that these securities were issued and sold to the complainants in Tennessee; that by the laws of that state a foreign corporation, before doing business therein, is required to file with the Secretary of State at Nashville a certified copy of its charter, and also to file an abstract of its charter with the register in each of the counties in which it proposes to do business; that it is further provided by the laws of that state that a foreign corporation doing business therein, without having first complied with the above requirements, is liable, among other things, to pay back all sums of money received from persons with whom it has made contracts or done business in that state, together with interest thereon at the rate of six per cent; that the contracts held by the complainants were made in violation of the above statutory requirements, and were entered into by them without knowledge of any infraction of law and in good faith; that the defendant has never had nor engaged in any other corporate business than the issuing of the "Diamond Investment Contracts" and the "Eight Percent Investment Certificates"; that "the theory and scheme of the defendant's business is a fraud, and was designed and intended by its agents and promoters as a fraud"; that the contracts in question on their face are "impracticable and impossible of fulfillment"; that the complainants acting in good faith were induced to enter into them by false representations and fraud on the part of the defendant, the particulars of which are set forth in the bill and in the exhibits made part thereof; that the defendant is insolvent; that owing to the condition of the defendant and the conduct of its affairs its assets will be totally wasted and destroyed before the complainants could recover judgment and issue execution, and the complainants would thereby have "no remedy or redress whatever"; and that the matter in dispute exclusive of interest and costs exceeds the sum of $2,500. The amendment to the bill alleges, among other things, that the defendant has assets to an amount exceeding $20,000. It appears from the amended bill and exhibits that, while no one of the complainants has a claim against the defendant which "exceeds, exclusive of interest and costs, the sum or value of two thousand dollars," their claims, exclusive of interest and

costs, collectively are largely in excess of such sum or value. The first prayer is to the effect that the defendant account for all moneys and other property received, held or owned by it since its incorporation, and for all payments or other disposition thereof. The second prayer is for a permanent and preliminary injunction restraining the defendant from selling or otherwise disposing of or permitting to be removed from Delaware any of its moneys or other assets, or its books or papers. It then proceeds as follows:

"And further, the complainants, in behalf of themselves and the aforesaid other creditors of the said Mutual Fidelity Company, pray that this Honorable Court may decree that they have a lien upon the assets of the said Mutual Fidelity Company for the amounts that they have paid into the said company, and that the said assets of the said Mutual Fidelity Company may be distributed among all the creditors of the said company who may come in and prove their claims, so far as the assets of the said company may go for such purpose.

And further, your orators pray the appointment of a Receiver, with the usual powers, to take charge of the assets, books, papers and accounts of the defendant corporation, to administer and distribute its assets, and under the direction of the court to endeavor to collect such of its moneys and other assets as have been disposed of fraudulently, illegally or without consideration."

The third prayer is for the appointment of a receiver or receivers with less extensive powers than those to be exercised by the receiver appointed under the second prayer. Then follow the general prayers for further relief and answer.

The defendant has assigned nine grounds of demurrer. The first is in effect that the court is without jurisdiction in the premises, in that it appears from the bill that the suit is one in which diversity of citizenship between the parties is necessary to the existence of jurisdiction, and it further appears therefrom that "the claims set up therein by each of said plaintiffs are so separate and distinct that any one of them may proceed with the litigation without the others, and that the claim of each of said plaintiffs is independent of the others, and that the claim of each of said plaintiffs is for a less sum than $2,000.00." The circuit courts of the United States have original cognizance, concurrent with the courts of the several states, of all suits of a civil nature at common law or in equity in which there is a controversy between citizens of different states where the matter in dispute exceeds, exclusive of interest and costs, the sum or value of $2,000. Where the jurisdiction is founded on diversity of citizenship the amount of the matter in dispute is jurisdictional. It is a general and long established rule that a joinder in one suit of separate and distinct claims or demands, each for less than the jurisdictional amount, in favor of or against separate and distinct persons respectively, though in the aggregate exceeding that amount, will not confer jurisdiction, and this rule has been applied equally to original and appellate jurisdiction. In Walter v. Northeastern Railroad Co., 147 U. S. 370, 13 Sup. Ct. 348, 37 L. Ed. 206, the court through Mr. Justice Brown said:

"It is well settled in this court that when two or more plaintiffs, having several interests, unite for the convenience of litigation in a single suit, it can only be sustained in the court of original jurisdiction, or on appeal in this court, as to those whose claims exceed the jurisdictional amount; and

that when two or more defendants are sued by the same plaintiff in one suit the test of jurisdiction is the joint or several character of the liability to the plaintiff. * * * In short, the rule applicable to several plaintiffs having separate claims, that each must represent an amount sufficient to give the court jurisdiction, is equally applicable to several liabilities of different defendants to the same plaintiff."

Nor can the mere circumstance that such separate and distinct claims or demands may have arisen or resulted from the same transaction or have relation to a common fund defeat or affect the application of the rule. In Wheless v. St. Louis, 180 U. S. 379, 21 Sup. Ct. 402, 45 L. Ed. 583, the court through Chief Justice Fuller said:

"The general rule was thus stated by Mr. Justice Bradley in Clay v. Field, 138 U. S. 464, 479 [11 Sup. Ct. 419, 34 L. Ed. 1044]: 'The general principle observed in all is, that if several persons be joined in a suit in equity or admiralty, and have a common and undivided interest, though separable as between themselves, the amount of their joint claim or liability will be the test of jurisdiction; but where their interests are distinct, and they are joined for the sake of convenience only, and because they form a class of parties whose rights or liabilities arose out of the same transaction, or have relation to a common fund or mass of property sought to be administered, such distinct demands or liabilities cannot be aggregated together for the purpose of giving this court jurisdiction by appeal, but each must stand or fall by itself alone.' "

After a thorough examination of the authorities, however, the above mentioned rule does not, in my opinion, negative the existence of jurisdiction in this case. The bill is principally founded on the act of March 25, 1891 (chapter 181, 19 Del. Laws 1891). It is as follows:

"That whenever a corporation shall be insolvent, the Chancellor, on the application and for the benefit of any creditor or stockholder thereof, may, at any time, in his discretion, appoint one or more persons to be receivers of and for such corporation, to take charge of the estate, effects, business and affairs thereof, and to collect the outstanding debts, claims, and property due and belonging to the company, with power to prosecute and defend, in the name of the corporation or otherwise, all claims or suits, to appoint an agent or agents under them, and to do all other acts which might be done by such corporation and may be necessary and proper; the powers of such receivers to be such and continued so long as the Chancellor shall think necessary; provided, however, that the provisions of this act shall not apply to corporations for public improvement."

The defendant, being insolvent and not a corporation for public improvement, was subject to the provisions of the act and, on the application of any creditor thereof, the Chancellor would have possessed discretionary power to deal with it as provided in the act. Proceedings under the act are of an essentially equitable nature. The Chancellor has, on proper application, power through a receiver or receivers appointed by him, to take charge and possession of the affairs and property of an insolvent corporation, and, for the protection and benefit of creditors and stockholders, or both, either temporarily or fully administer the same. In case of full administration, the assets of the corporation are to be distributed among the creditors and, should a surplus from any cause exist, among the stockholders in accordance with the principles of equity. While valid existing liens or priorities are recognized and enforced, the in-

stitution of proceedings under the statute does not create or result in the creation of a preference of any kind. The act is calculated to secure a proper adjustment of the affairs of the corporation and a just and equitable distribution of its assets among its creditors. The purpose of the bill is to secure a full administration of the property of the defendant as an insolvent corporation. The complainants pray not only for the appointment of a receiver but that the defendant's assets "may be distributed among all the creditors of the said company who may come in and prove their claims, so far as the assets of the said company may go for such purpose." Under the Delaware statute the right, subject to the discretion of the court, to secure the appointment of a receiver of an insolvent corporation and the full and final distribution of its assets is conferred "on any creditor or stockholder thereof." It is wholly immaterial, so far as the accomplishment of this purpose is concerned, whether suit be instituted by only one creditor or by several separate and distinct creditors. In either case the proceedings, if sustained, result in the taking possession by the court of the assets of the corporation in their totality as a common fund for the benefit of creditors, and, unless the receivership be sooner determined, the administration by the court of that fund pro rata, after the satisfaction of prior claims, if any. The action of the court, although invoked by only one creditor necessarily enures, subject to priorities, if any, to the pro rata benefit of all the creditors. In this case the assets of the defendant are in excess of the jurisdictional amount, and the claims of the several complainants, though severally below, in the aggregate exceed that amount. The complainants respectively, it is true, appear to have separate and distinct claims. The joinder of such claims, however, is by settled construction within the act and conforms to the established practice under it. While each complainant has a separate and distinct claim, all of them have a common interest in the result of the suit. Each of them is interested that the defendant's assets should be wrested from it and, as a fund, administered by the court, unless the receivership be sooner determined, in order to ascertain the amount or share he or she shall receive. The complainants, thus, among themselves holding claims in excess of the jurisdictional amount, have a common or joint interest in a controversy involving a fund exceeding that amount. In Davies v. Corbin, 112 U. S. 36, 5 Sup. Ct. 4, 28 L. Ed. 627, it appeared that a peremptory writ of mandamus had been awarded by the court below commanding the collection of a certain tax at a specified rate for distribution pro rata among certain creditors who had severally recovered separate and distinct judgments. The aggregate amount of all the judgments was more than $5,000, but it did not appear that any one of them was equal to that sum. The amount of the whole tax was also more than $5,000. On behalf of the collector a motion was made to dismiss the writ of error on the ground, among others, that the amount in controversy did not exceed $5,000, and on this ground his contention was as follows:

"The amount in controversy is not sufficient to give jurisdiction. No taxpayer will pay on the levy more than $1,500. If not the amount which each

tax-payer has to pay on this levy, then the amount which each creditor, separately, will receive from this levy, so far as value is concerned, fixes the jurisdiction of this court."

The court, however, said:

"The writ which has been ordered in this case is not like that in Hawley v. Fairbanks, 108 U. S. 543 [2 Sup. Ct. 846, 27 L. Ed. 820], to compel the levy of taxes, to pay separate and distinct judgments, in favor of several relators, who, for convenience and to save expense, united in one suit to enforce their respective rights, but to compel a tax collector to collect a single tax which has been levied for the joint benefit of all the relators, and in which they have a common and undivided interest. As in the cases of Shields v. Thomas, 17 How. 3, 5 [15 L. Ed. 93], and The Connemara, 103 U. S. 754 [26 L. Ed. 322], all the relators claim under one and the same title, to wit, the levy of a tax which has been made for their benefit. They have a common interest in the tax, and it is perfectly immaterial to the tax collector how it is divided among them. * * * His duty is to collect the tax for the benefit of all alike. A payment of the judgment of one creditor would not relieve him from his obligation to collect the whole tax. The object of the proceeding is, not to raise the sums due the relators, but to raise the whole tax of ten mills on the dollar. As the matter stands, each relator has the right to have the whole tax collected for the purpose of distribution among all the creditors. It is apparent, therefore, that the dispute is between the tax collector on one side and all the creditors on the other, as to his duty to collect the tax as a whole for division among them, after the collection is made, according to their several shares. The value of the matter in dispute is measured by the whole amount of the tax, and not by the separate parts into which it is to be divided when collected."

The above case presents a strong analogy to that now under discussion, and it seems to me that the jurisdiction of this court in this case rests upon grounds quite as strong as those disclosed in the case just cited. If the relators there, having separate and distinct judgments, claimed "under one and the same title, to wit, the levy of the tax which has been made for their benefit," the complainants here, having separate and distinct demands, seek to claim under one and the same title, to wit, the acquisition and pro rata distribution by the court of a fund for their common benefit. In Handley v. Stutz, 137 U. S. 366, 11 Sup. Ct. 117, 34 L. Ed. 706, a bill in equity had been brought by certain judgment creditors, holding separate and distinct claims, in behalf of themselves and all other creditors of an insolvent corporation, against the corporation and certain stockholders thereof. Each of the stockholders who appealed had been charged by the court below with more than $5,000. The claims of the creditors, allowed below, aggregated $22,888, varying in amount from $4,032 to $3.25. The smallest claim of any of the original complainants amounted to $464. The court through Mr. Justice Gray said:

"Such a bill can only be maintained by one or more creditors in behalf of all, and not by any one creditor to secure payment of his own debt to the exclusion of others. Sawyer v. Hoag, 17 Wall. 610, 622 [21 L. Ed. 731]; Patterson v. Lynde, 106 U. S. 519 [27 L. Ed. 265]; Johnson v. Waters, 111 U. S. 640, 674 [4 Sup. Ct. 619, 28 L. Ed. 547]. * * * The contest is upon the sufficiency in amount of the creditors' claims to support the jurisdiction of the Circuit Court in the first instance, and of this court on appeal, within the meaning of the statutes limiting the jurisdiction of each court to cases in which the sum in dispute exceeds $2,000 and $5,000 respectively. * * * The sums alleged to be due from the corporation to the original plaintiffs

123 F.—33

amounting to more than $2,000, the Circuit Court had jurisdiction of the case, and authority to administer and distribute the amounts, due from the individual defendants to the corporation for unpaid subscriptions to stock, as a trust fund for the benefit of all the creditors of the corporation, and for that purpose to permit creditors, who had not originally joined in the bill, to come in and prove their claims before a mastei. Johnson v. Waters, above cited. The trust fund so administered and ordered to be distributed by the Circuit Court amounting to much more than $5,000, the appellate jurisdiction of this court is not affected by the fact that the amounts decreed to some of the creditors are less than that sum. It was immaterial to the appellants how the sums decreed to be paid by them should be distributed, and (which is more decisive) such a bill as this could not have been filed by one creditor in his own behalf only, and the case does not fall under that class in which creditors, who might have sued severally, join in one bill for convenience and to save expense. This court, therefore, has jurisdiction of the whole appeal, according to the rule affirmed in Gibson v. Shufeldt, 122 U. S. 27 [7 Sup. Ct. 1066, 30 L. Ed. 1083], and the cases there collected."

Here, as in Handley v. Stutz, the fund sought to be distributed is in excess of the jurisdictional amount; the claims of all the complainants are in the aggregate more than that amount; it is immaterial to the defendant how the sums which may be decreed to be paid by it should be distributed; and this bill, in so far as it is founded on the Delaware statute, could not have been filed by one creditor solely in his own behalf, or, in other words, the relief to be granted could not be confined to such creditor, but would necessarily extend to all who should be beneficially entitled under the remedy provided by the act and seasonably present their claims. Mr. Justice Gray who, as above stated, delivered the opinion of the court in Handley v. Stutz was also its mouth-piece in Gibson v. Shufeldt, 122 U. S. 27, 7 Sup. Ct. 1066, 30 L. Ed. 1083. The two cases are harmonious with each other. The rule stated to have been affirmed in Gibson v. Shufeldt was laid down in that case as follows:

"When property or money is claimed by several persons suing together, the test is whether they claim it under one common right, the adverse party having no interest in its apportionment or distribution among them, or claim it under separate and distinct rights each of which is contested by the adverse party."

These cases and others which might be cited show that, where several creditors respectively holding separate and distinct claims join in pursuing such a remedy against a common fund as that given by the Delaware statute against the assets of an insolvent corporation, where the relief to be accorded of necessity reaches and affects the claims of all creditors entitled to the benefits of the act, and it is immaterial to the defendant how the fund in the possession of the court is to be distributed among creditors, such joinder is of those who claim under a common right inherent in the nature of the statutory remedy. However separate and distinct their respective claims, when considered apart from the remedy resorted to and the relief sought, the complainants have a common, if not a joint interest in such remedy and relief; and consequently their claims may be joined for jurisdictional purposes. But wholly aside from the consideration of any joinder of claims, the value of the matter in dispute in this case, exclusive of interest and costs, exceeds $2,000. The fact that a less sum would suffice to pay in full the pecuniary

demand of a suitor and thereby extinguish his right to maintain suit is not in all cases determinative of the nonexistence of the jurisdictional amount. Frequently the value of the property and rights constituting the subject of litigation, the possession, enjoyment or other disposition of which it is the object of the suit to control or affect, and not the value of the suitor's interest or claim, or the existence of actual or threatened damage to him, determines for jurisdictional purposes the amount of the matter in dispute. In many cases where one has a given demand or interest which serves as the foundation or cause of his action the existence of jurisdiction may absolutely depend on the object of the suit and the nature of the relief sought. Thus in case of a nuisance, if one sues at law for damages on account of the injury sustained by him, the existence of the jurisdictional amount will depend on the sum in good faith claimed in the declaration. But if a bill in equity be filed for the purpose of abating or enjoining the erection of a nuisance, consisting of a structure, the value of the structure, and not the pecuniary damage suffered by the complainant, will determine the existence of the jurisdictional amount. Mississippi & Missouri Railroad Company v. Ward, 2 Black, 485, 17 L. Ed. 311; Rainey v. Herbert, 55 Fed. 443, 5 C. C. A. 183. So, in Putnam v. Timothy Dry-Goods & Carpet Co. (C. C.) 79 Fed. 454, it was held that on a bill brought on behalf of all creditors, for the administration of a trust fund, the value of the matter in dispute for jurisdictional purposes was the amount of the fund. And it also has been decided that, in a suit for the appointment of a receiver of an insolvent corporation and a full and final administration of its assets, the amount of the matter in dispute is determined by the value of the property to be administered. Towle v. American Bldg., Loan & Inv. Soc. (C. C.) 60 Fed. 131; Taylor v. Decatur Mineral & Land Co. (C. C.) 112 Fed. 449. In the former case Judge Grosscup said:

"It is sufficient to say that whenever any property or claim of parties capable of a pecuniary estimation is the subject of litigation, a controversy, within the meaning of the judiciary act, is disclosed. In this case the entire assets of the society are brought into court for administration, and are, therefore, the matters in dispute or controversy."

In the latter case Judge Toulmin said:

"The amount in dispute is the value of the property and assets of the defendant which the bill seeks to have administered by the court."

In view of the foregoing considerations and authorities, the contention that it does not appear from the bill that the matter in dispute is equal in value to the jurisdictional amount cannot be sustained.

The eighth ground of demurrer is that the complainants "have no lien upon the assets of defendant." It is well settled that creditors of an insolvent corporation holding legal claims not reduced to judgment nor secured by any express lien have not any direct lien or charge on its assets on account of such claims. It has often been said that the assets of an insolvent corporation constitute a trust fund for the payment of its creditors. But this is true only in a qualified sense, namely, that such creditors, after a court of equity

in a proper proceeding instituted by the proper party has taken possession of the corporate assets, have an equitable right, before any distribution among stockholders, to share therein. But, independently of such a proceeding, mere corporate insolvency neither confers on creditors any lien on the corporate assets, nor renders such assets the subject of a trust in favor of creditors. Whatever trust may exist is "rather a trust in the administration of the assets after possession by a court of equity than a trust attaching to the property, as such, for the direct benefit of either creditor or stockholder." Hollins v. Brierfield Coal & Iron Co., 150 U. S. 371, 383, 14 Sup. Ct. 127, 37 L. Ed. 1113. In the case just cited the court through Mr. Justice Brewer, after referring to the authorities on the point, said:

"These cases negative the idea of any direct trust or lien attaching to the property of a corporation in favor of its creditors, and at the same time are entirely consistent with those cases in which the assets of a corporation are spoken of as a trust fund, using the term in the sense that we have said it was used. The same idea of equitable lien and trust exists to some extent in the case of partnership property. Whenever, a partnership becoming insolvent, a court of equity takes possession of its property, it recognizes the fact that in equity the partnership creditors have a right to payment out of those funds in preference to individual creditors, as well as superior to any claims of the partners themselves. And the partnership property is, therefore, sometimes said, not inaptly, to be held in trust for the partnership creditors, or, that they have an equitable lien on such property. Yet, all that is meant by such expressions is the existence of an equitable right which will be enforced whenever a court of equity, at the instance of a proper party and in a proper proceeding, has taken possession of the assets. It is never understood that there is a specific lien, or a direct trust. A party may deal with a corporation in respect to its property in the same manner as with an individual owner, and with no greater danger of being held to have received into his possession property burdened with a trust or lien. The officers of a corporation act in a fiduciary capacity in respect to its property in their hands, and may be called to an account for fraud or sometimes even mere mismanagement in respect thereto; but as between itself and its creditors the corporation is simply a debtor, and does not hold its property in trust, or subject to a lien in their favor, in any other sense than does an individual debtor. That is certainly the general rule, and if there be any exceptions thereto they are not presented by any of the facts in this case. Neither the insolvency of the corporation, nor the execution of an illegal trust deed, nor the failure to collect in full all stock subscriptions, nor, all together, gave to these simple contract creditors any lien upon the property of the corporation, nor charged any direct trust thereon."

It is, therefore, evident that this bill cannot be sustained on the theory of a lien, legal or equitable, or a trust, in favor of the complainants, their claims not having been reduced to judgment and no trust or lien having yet come into existence.

In the absence of statutory authority, the complainants, as general unsecured creditors at law, who have not reduced their claims to judgment, could not solely on the ground of insolvency successfully maintain their bill against the defendant to deprive it of the possession of its assets and secure their administration and distribution. The demurrer does not assign as a cause that it does not appear that the complainants have obtained judgment on their claims. This objection, however, was at the hearing made ore tenus in support of the demurrer, and also was discussed in the briefs of counsel. Under these circumstances the objection thus made should be treated

in the same manner as if formally assigned in the demurrer. Holland v. Challen, 110 U. S. 15, 18, 3 Sup. Ct. 495, 28 L. Ed. 52; 1 Dan. Ch. Pl. & Pr. *657. The Delaware statute in conferring on the Chancellor authority, solely on the ground of insolvency, to appoint receivers for insolvent corporations and take possession of and fully and finally distribute their assets, provided a purely equitable procedure for the enforcement of equitable rights on the part of creditors and stockholders. For, as was said in Hollins v. Brierfield Coal & Iron Co., supra, "the administration of the assets of an insolvent corporation is within the functions of a court of equity." The right, subject to the discretion of the Chancellor, to resort to and enjoy this equitable statutory remedy, is given to any creditor or stockholder of an insolvent corporation, and, as far as creditors are concerned, does not require that they shall have obtained judgment on their claims, or secured any lien or charge on the corporate assets. Under the settled construction of the act its provisions apply as well to general and unsecured creditors as to creditors whose claims have been reduced to judgment or otherwise judicially ascertained, or are admitted. The equitable right and remedy created by the act belong to creditors of insolvent corporations as such. In the absence of such a statute as that in question neither the court of chancery nor any other court in Delaware would at the instance of creditors have authority, solely on the ground of insolvency, to appoint a receiver to take charge of the affairs and collect and make final distribution of the assets of a Delaware corporation. Can this equitable statutory remedy be pursued by creditors in this court? And, if so, under what circumstances? While a state law cannot confer jurisdiction on any federal court, it may create a substantial right which the proper federal court, otherwise possessing jurisdiction, may enforce by a proper remedy whether in equity, or admiralty, or at law. Ex parte McNiel, 13 Wall. 236, 243, 20 L. Ed. 624; Davis v. Gray, 16 Wall. 203, 221, 21 L. Ed. 447; Scott v. Neely, 140 U. S. 106, 109, 11 Sup. Ct. 712, 35 L. Ed. 358; Cowley v. Northern Pacific Railroad Co., 159 U. S. 569, 582, 16 Sup. Ct. 127, 40 L. Ed. 263. It has been said, and often repeated, that "a party by going into a national court does not lose any right or appropriate remedy of which he might have availed himself in the state courts of the same locality. The wise policy of the Constitution gives him a choice of tribunals." Mr. Justice Swayne in Davis v. Gray, supra. Whether a right or remedy created by a state is to be pursued on the law or equity side of a federal court depends on its essential nature. There is a fundamental distinction growing out of the federal constitution and legislation between legal and equitable procedure. The seventh amendment to the constitution provides that "in suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." And section 16 of the Judiciary Act of Sept. 24, 1789 [1 Stat. 82], reproduced in section 723 of the revised statutes [U. S. Comp. St. 1901, p. 583], enacts that "suits in equity shall not be sustained in either of the courts of the United States in any case where a plain, adequate, and complete remedy may be had at law." These constitutional and

statutory provisions control the procedure of the federal courts; and the propriety of resorting in any given case to the law side of the court, on the one hand, or, on the other, to the equity side, must be determined with reference to them. In Fenn v. Holme, 21 How. 481, 484, 16 L. Ed. 198, the court through Mr. Justice Daniel said:

"In every instance in which this court has expounded the phrases, proceedings at the common law and proceedings in equity, with reference to the exercise of the judicial powers of the courts of the United States, they will be found to have interpreted the former as signifying the application of the definitions and principles and rules of the common law to rights and obligations essentially legal; and the latter, as meaning the administration with reference to equitable as contradistinguished from legal rights, of the equity law as defined and enforced by the Court of Chancery in England."

It follows that the practice of state courts cannot affect the distinction to be observed in the courts of the United States between common law remedies and equitable remedies. In Robinson v. Campbell, 3 Wheat. 212, 223, 4 L. Ed. 372, the court through Mr. Justice Todd said:

"The remedies in the courts of the United States are to be, at common law or in equity, not according to the practice of state courts, but according to the principles of common law and equity, as distinguished and defined in that country from which we derive our knowledge of those principles."

And in Mississippi Mills v. Cohn, 150 U. S. 202, 204, 14 Sup. Ct. 75, 37 L. Ed. 1052, the court through Mr. Justice Brewer said:

"It is well settled that the jurisdiction of the Federal courts, sitting as courts of equity, is neither enlarged nor diminished by state legislation. Though by it all differences in forms of action may be abolished; though all remedies be administered in a single action at law; and, so far at least as form is concerned, all distinction between equity and law be ended, yet the jurisdiction of the Federal court, sitting as a court of equity, remains unchanged."

So marked is the distinction between the jurisdiction of the courts of the United States in equity and at law with respect to procedure that the blending together in one suit in a federal court of essentially legal and equitable remedies cannot be authorized or justified by any state statute or practice on the subject. Bennett v. Butterworth, 11 How. 669, 674, 12 L. Ed. 1013; Scott v. Neely, 140 U. S. 106, 110, 11 Sup. Ct. 712, 35 L. Ed. 358; Scott v. Armstrong, 146 U. S. 499, 512, 13 Sup. Ct. 148, 36 L. Ed. 1059; Lindsay v. Shreveport Bank, 156 U. S. 485, 493, 15 Sup. Ct. 472, 39 L. Ed. 505. An allowance of such blending would result in a confusion of procedure not contemplated in the federal constitution or judiciary act, and would be calculated to embarrass the administration of justice. But though no state legislation is competent to extend or restrict the jurisdiction of the federal courts, a state may create an enlargement of rights and remedies, whether equitable or legal, which may be enforced or pursued in a federal court in the exercise of that branch of its jurisdiction which is appropriate to the case. And where a state statute creates a right and a remedy for its protection or enforcement, and such remedy substantially conforms to the procedure in chancery, it, in the absence of a plain, adequate and complete remedy at law, may be pursued on the equity side of a federal court. In Clark v.

Smith, 13 Pet. 195, 203, 10 L. Ed. 123, the court through Mr. Justice Catron said:

"The state legislatures certainly have no authority to prescribe the forms and modes of proceeding in the courts of the United States; but having created a right, and at the same time prescribed the remedy to enforce it, if the remedy prescribed is substantially consistent with the ordinary modes of proceeding on the chancery side of the federal courts, no reason exists why it should not be pursued in the same form as it is in the state courts."

And in Gormley v. Clark, 134 U. S. 338, 348, 10 Sup. Ct. 554, 33 L. Ed. 909, the court through Chief Justice Fuller said:

"An enlargement of equitable rights by state statute may be administered by the Circuit Courts of the United States as well as by the courts of the States; and when the case is one of a remedial proceeding, essentially of an equitable character, there can be no objection to the exercise of the jurisdiction."

Again in Whitehead v. Shattuck, 138 U. S. 146, 152, 11 Sup. Ct. 276, 34 L. Ed. 873, the court through Mr. Justice Field said:

"The State, it is true, may create new rights and prescribe the remedies in enforcing them, and, if those remedies are substantially consistent with the ordinary modes of proceeding in equity, there is no reason why they should not be enforced in the courts of the United States."

Nor can a state by providing an action at law for the enforcement of a statutory equitable right destroy or affect the jurisdiction of a federal court to enforce such right in equity. In Sheffield Furnace Co. v. Witherow, 149 U. S. 574, 579, 13 Sup. Ct. 936, 37 L. Ed. 853, the court through Mr. Justice Brewer said:

"It may well be affirmed that a State, by prescribing an action at law to enforce even statutory rights, cannot oust a Federal court, sitting in equity, of its jurisdiction to enforce such rights, provided they are of an equitable nature."

And in Smyth v. Ames, 169 U. S. 466, 516, 18 Sup. Ct. 418, 42 L. Ed. 819, the court through Mr. Justice Harlan said:

"One who is entitled to sue in the Federal Circuit Court may invoke its jurisdiction in equity whenever the established principles and rules of equity permit such a suit in that court; and he cannot be deprived of that right by reason of his being allowed to sue at law in a state court on the same cause of action. * * * If the case in its essence be one cognizable in equity, the plaintiff—the required value being in dispute—may invoke the equity powers of the proper Circuit Court of the United States whenever jurisdiction attaches by reason of diverse citizenship or upon any other ground of Federal jurisdiction."

It is an established rule that "whenever a court of law is competent to take cognizance of a right, and has power to proceed to a judgment which affords a plain, adequate, and complete remedy, without the aid of a court of equity, the plaintiff must proceed at law, because the defendant has a constitutional right to a trial by jury." Hipp v. Babin, 19 How. 271, 278, 15 L. Ed. 633; Insurance Co. v. Bailey, 13 Wall. 616, 620, 20 L. Ed. 501; Grand Chute v. Winegar, 15 Wall. 373, 21 L. Ed. 170; Buzard v. Houston, 119 U. S. 347, 351, 4 Sup. Ct. 249, 30 L. Ed. 451; Whitehead v. Shattuck, 138 U. S. 151, 11 Sup. Ct. 276, 34 L. Ed. 873. But the existence of a remedy at law for the enforcement of a right does not ex-

clude the exercise of equitable jurisdiction unless such legal remedy is "as practical and as efficient to the ends of justice and its prompt administration, as the remedy in equity." Boyce's Executors v. Grundy, 3 Pet. 210, 215, 9 L. Ed. 127; Watson v. Sutherland, 5 Wall. 74, 78, 18 L. Ed. 580; Insurance Co. v. Bailey, 13 Wall. 616, 620, 20 L. Ed. 501; Lewis v. Cocks, 23 Wall. 466, 470, 23 L. Ed. 70; Drexel v. Berney, 122 U. S. 241, 252, 7 Sup. Ct. 1200, 30 L. Ed. 1219; Allen v. Hanks, 136 U. S. 300, 311, 10 Sup. Ct. 961, 34 L. Ed. 414; Rich v. Braxton, 158 U. S. 375, 406, 15 Sup. Ct. 1006, 39 L. Ed. 1022. The proposition that the legal remedy to have such effect must be adequate and complete as well as plain has been strongly emphasized by the language of the supreme court on many occasions. In Lewis v. Cocks, supra, the court through Mr. Justice Swayne said:

"To bar equitable relief the legal remedy must be equally effectual with the equitable remedy, as to all the rights of the complainant."

In Case of Broderick's Will, 21 Wall. 503, 520, 22 L. Ed. 599, the court through Mr. Justice Bradley said:

"Much of equitable jurisdiction consists of better and more effective remedies for attaining the rights of parties."

In Holland v. Challen, 110 U. S. 15, 25, 3 Sup. Ct. 495, 28 L. Ed. 52, the court through Mr. Justice Field said:

"It is not an objection to the jurisdiction of equity that legal questions are presented for consideration which might also arise in a court of law. If the controversy be one in which a court of equity only can afford the relief prayed for, its jurisdiction is unaffected by the character of the questions involved."

In Kilbourn v. Sunderland, 130 U. S. 505, 514, 9 Sup. Ct. 594, 32 L. Ed. 1005, the court through Chief Justice Fuller said:

"The jurisdiction in equity attaches unless the legal remedy, both in respect to the final relief and the mode of obtaining it, is as efficient as the remedy which equity would confer under the same circumstances."

In Gormley v. Clark, 134 U. S. 338, 349, 10 Sup. Ct. 554, 33 L. Ed. 909, the court through Chief Justice Fuller said:

"It is strenuously insisted that the remedy at law was adequate, and that as the right of possession was purely a legal question and for a jury, the court of chancery should have declined jurisdiction; but, inasmuch as the case came within the provisions of the statute, and equity could alone afford the entire relief sought, the fact that legal questions were also involved could not oust the court of jurisdiction."

It would be impracticable to furnish a reliable test to determine in all cases whether the proceedings in a federal court for the enforcement of a right should be in equity or at law. Many cases are in this respect debatable and the solution of the question must depend on the particular circumstances attending them. In Watson v. Sutherland, 5 Wall. 74, 79, 18 L. Ed. 580, the court through Mr. Justice Davis said:

"The absence of a plain and adequate remedy at law affords the only test of equity jurisdiction, and the application of this principle to a particular case, must depend altogether upon the character of the case, as disclosed in the pleadings."

So, in Whitehead v. Shattuck, supra, the court through Mr. Justice Field said:

"It would be difficult, and perhaps impossible, to state any general rule which would determine, in all cases, what should be deemed a suit in equity as distinguished from an action at law, for particular elements may enter into consideration which would take the matter from one court to the other."

There are, however, certain proceedings which beyond dispute are essentially actions at law, and in federal courts must be brought on their law side, whatever may be the nature of the procedure provided by state legislation. In Scott v. Neely, supra, the court through Mr. Justice Field said:

"All actions which seek to recover specific property, real or personal, with or without damages for its detention, or a money judgment for breach of a simple contract, or as damages for injury to person or property, are legal actions, and can be brought in the federal courts only on their law side. Demands of this kind do not lose their character as claims cognizable in the courts of the United States only on their law side, because in some state courts, by virtue of state legislation, equitable relief in aid of the demand at law may be sought in the same action. Such blending of remedies is not permissible in the courts of the United States."

Where the direct object of a suit is the judicial ascertainment of the existence and amount of a pecuniary legal demand and the enforcement of its payment by the process of the court in which the suit is brought, the proceeding is essentially an action at law, and in a federal court must be so treated, regardless of state legislation. In such a case a court of law furnishes the appropriate remedy. The distinctively legal nature of such a remedy is not lost merely because, owing to the circumstances of a given case, the purpose of the action may fail of accomplishment. To use the language employed by Mr. Justice Hunt in Rees v. City of Watertown, 19 Wall. 107, 124, 22 L. Ed. 72, "the remedy is in law and in theory adequate and perfect. The difficulty is in its execution only. The want of a remedy and the inability to obtain the fruits of a remedy are quite distinct." If the remedy is essentially legal and in its nature fitted or adapted, in the absence of obstacles, which may or may not exist, to attain the object in view, then, whatever equitable procedure may in particular cases be resorted to in aid of the legal remedy, it cannot wholly displace it. The jurisdiction of chancery to reach legal or equitable assets of a defendant, whether a corporation or a natural person, in aid of a legal remedy for a money demand, is indisputable. But as such an exercise of jurisdiction is not by way of substitution for, but only in aid of, the legal remedy, it can be resorted to only after the plaintiff has exhausted such remedy. This necessitates the obtaining of judgment for the demand and, usually, the issuance of execution and its return unsatisfied. In Cates v. Allen, 149 U. S. 451, 457, 13 Sup. Ct. 883, 37 L. Ed. 804, the court through Chief Justice Fuller said:

"The existence of judgment, or of judgment and execution, is necessary, first, as adjudicating and definitely establishing the legal demand, and, second, as exhausting the legal remedy."

And in Scott v. Neely, supra, the court through Mr. Justice Field said:

"The Constitution, in its Seventh Amendment, declares that 'in suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved.' In the Federal courts this right cannot be dispensed with, except by the assent of the parties entitled to it, nor can it be impaired by any blending with a claim, properly cognizable at law, of a demand for equitable relief in aid of the legal action or during its pendency. Such aid in the Federal courts must be sought in separate proceedings, to the end that the right to a trial by a jury in the legal action may be preserved intact."

It has been held, however, that, where, after recovery of judgment on a pecuniary demand, it clearly appears that an execution would be unavailing, the issue of a writ and its return unsatisfied are not a condition precedent to the interposition of equity in aid of the legal remedy. The discretionary power of a court of equity, for its own enlightenment, to submit issues of fact to a jury, is not equivalent to the right to jury trial secured by the federal constitution. Cates v. Allen, supra. Whitehead v. Shattuck, supra. The fact that equitable relief can be granted in aid of a legal remedy only after the plaintiff has exhausted such remedy precludes the possibility of any clash or conflict between legal jurisdiction and equitable jurisdiction or of any blending of legal and equitable remedies in the same suit. There is a clear distinction between the exercise of equitable jurisdiction in aid of a legal remedy for the collection of a pecuniary legal demand, and the exercise of equitable jurisdiction in enforcing a purely equitable right by a purely equitable remedy, created by a valid state statute, not in aid of any legal remedy, but wholly independently thereof, though the existence of such equitable right and remedy may presuppose and be dependent on the existence of such pecuniary legal demand. Failure to recognize this distinction has produced some confusion in the cases. The fact that a right may be cognizable at law by no means determines that it may not be cognizable in equity and serve as the basis for a purely equitable remedy. In many cases a given demand or interest may constitute the foundation of a suit either at law or in equity; and whether the procedure shall be at law, on the one hand, or, on the other, in equity, absolutely depends on the object of the suit and the nature of the relief sought. If the procedure and relief are essentially equitable, the circumstance that they bear relation to a legal demand is immaterial. Where the procedure and relief provided by a state statute are essentially equitable, and such relief is impossible of attainment in any action at law, not owing to the existence of any accidental or abnormal obstacles or difficulties, but by reason of the essential nature of such action and legal process, a case for purely equitable cognizance under the statute is presented. Where equitable rights and remedies under a statute, founded on or bearing relation to pecuniary legal demands, would be defeated by exhausting the remedy at law on such demands, such equitable remedies cannot be considered as in aid of the legal remedy. Under such circumstances an exhaustion of the legal remedy would practically nullify the remedy in equity, and therefore, if force should be given to the statute, it would be not

only unnecessary, but improper, before proceeding thereunder to exhaust the legal remedy. In such a case, to enjoy the equitable rights and remedies provided by the statute, it would be necessary that only the equitable procedure therein authorized should be followed, without any exhaustion of a legal remedy. Being a purely equitable proceeding the constitutional guaranty of jury trial would, of course, have no application. That the framers of the federal constitution did not intend that the right to the ascertainment of disputed facts by a jury should inhere in or be incidental to such a suit is clear. In Parsons v. Bedford, 3 Pet. 433, 446, 7 L. Ed. 732, the court through Mr. Justice Story said:

"It is well known that in civil causes, in courts of equity and admiralty, juries do not intervene, and that courts of equity use the trial by jury only in extraordinary cases to inform the conscience of the court. When, therefore, we find that the amendment requires that the right of trial by jury shall be preserved in suits at common law, the natural conclusion is, that this distinction was present to the minds of the framers of the amendment."

The fact that the equitable procedure provided by a state statute for the enforcement of a substantial equitable right created thereby does not in all respects correspond with the mere forms and modes of procedure usually observed in federal courts on their equity side, or that the enforcement of such new equitable right requires a modification of the accustomed procedure, not violative of established rules and principles, offers no bar to the prosecution in equity of such right in the federal courts. In Brine v. Insurance Co., 96 U. S. 627, 634, 24 L. Ed. 858, the court through Mr. Justice Miller, in speaking of the enforcement in federal courts of rights created by state statutes, said:

"It would seem that no argument is necessary to establish the proposition that when substantial rights, resting upon a statute, which is clearly within the legislative power, come in conflict with mere forms and modes of procedure, in the courts, the latter must give way, and adapt themselves to the forms necessary to give effect to such rights. The flexibility of chancery methods, by which it moulds its decrees so as to give appropriate relief in all cases within its jurisdiction, enables it to do this without violence to principle. If one or the other must give way, good sense unhesitatingly requires that justice and positive rights, founded both on valid statutes and valid contracts, should not be sacrificed to mere questions of mode and form."

This language was quoted by Mr. Justice Shiras with approval in Missouri, Kansas, &c. Trust Co. v. Krumseig, 172 U. S. 351, 361, 19 Sup. Ct. 179, 43 L. Ed. 474.

As before stated, proceedings under the Delaware statute are of an essentially equitable nature and, under its settled construction, may be instituted and maintained by non-judgment creditors, unsecured by any lien or trust. The powers of receivers appointed under the act are "such and continued so long as the Chancellor shall think necessary." The statute contemplates two classes of cases: First, proceedings which may result in the full and final administration and distribution on an equitable basis of the assets of the insolvent corporation among its creditors and, should a surplus from any cause exist, among its stockholders, subject to valid existing liens, if any; and, secondly, proceedings which may result in the taking posses-

sion of such assets and their retention by the court until such time as by a prudent, economical and successful management of the affairs of the insolvent corporation, it may be restored to solvency. In the first class of cases the receivership usually continues until the time arrives for final distribution, and, in the second, the receivership continues until the corporation has been restored to solvency. In many instances it may be impossible to foresee, at the time of the institution of proceedings under the statute, whether the result, on the one hand, will be only a temporary receivership and the restoration to the corporation of its assets, or, on the other, will be a permanent receivership and a final distribution of assets among creditors, and, possibly, stockholders. Nor does it follow from the fact that the bill may pray for such final distribution that a receivership may not be only temporary; for the receiver is to continue only "so long as the Chancellor shall think necessary." Either judgment or non-judgment creditors, or both, may institute proceedings under the statute. To authorize the appointment of a receiver two things only must be made to appear to the Chancellor, namely, that the complainant is a creditor of the corporation, and that the corporation is insolvent. If the corporation be shown to be insolvent no judicial ascertainment of the amount of the pecuniary demand of the complainant is a prerequisite to the appointment of a receiver. All that is required is that the fact should appear that he is a creditor. If proceedings are instituted by a judgment creditor, that fact appears by the exhibition of the judgment, which may also establish the amount of his demand; but if they are instituted by a non-judgment creditor, it is merely the fact that he is a creditor, and not the amount of his demand, that must appear to the court. In the latter case the amount of the demand is during the course of the proceedings subsequently ascertained before the court or a master in accordance with equity practice. The respective amounts due the complainant or complainants and other creditors of the corporation, whether established pursuant to equity practice during the course of the proceedings or by judgment or decree prior thereto, furnish the basis, subject to valid existing liens, for an equitable distribution of the corporate assets, should a final distribution be found necessary by the court. The broad object of the statute is that, in the discretion of the court, the affairs and assets of an insolvent corporation, not included in the exception, may be controlled, managed and disposed of by the court through a receivership for the benefit of creditors and stockholders; and this object is to be attained, according to the circumstances and exigencies of different cases, either by a temporary assumption by the court of the custody and management of the corporate affairs and assets, or by a complete administration of such affairs and a final distribution of such assets. The statute has thus created and conferred on simple contract creditors as well as judgment creditors a substantial right of a purely equitable nature and a purely equitable procedure to enforce it. No action at law by a non-judgment creditor nor any legal process on behalf of a judgment creditor, can enforce such a right. An exhaustion of the legal remedy for the collection of the pecuniary demands of complain-

ants, proceeding under the statute, would not only fail to secure to them the relief prayed for, but necessarily deprive them of it. An application of the assets of the insolvent corporation to final process at law would be destructive of the right conferred by the statute. This is not a case in which equitable jurisdiction can be exercised only in aid of a legal remedy for the removal of obstacles; but, on the contrary, one in which, by reason of its object, the complainants, though non-judgment creditors, are pursuing ab initio a purely equitable remedy for the enforcement of a purely equitable right. I am satisfied that such a remedy for such a right, although furnished by a state statute, is enforceable on the equity side of this court. I am not aware of any decision by the supreme court at variance with the conclusion thus reached. It is true that in Hollins v. Brierfield Coal & Iron Co., supra, the court said:

"The plaintiffs were simple contract creditors of the company; their claims had not been reduced to judgment, and they had no express lien by mortgage, trust deed, or otherwise. It is the settled law of this court that such creditors cannot come into a court of equity to obtain the seizure of the property of their debtor, and its application to the satisfaction of their claims; and this, notwithstanding a statute of the state may authorize such a proceeding in the courts of the state. The line of demarcation between equitable and legal remedies in the Federal courts cannot be obliterated by state legislation. Scott v. Neely, 140 U. S. 106 [11 Sup. Ct. 712, 35 L. Ed. 358]; Cates v. Allen, 149 U. S. 451 [13 Sup. Ct. 977, 37 L. Ed. 804]."

The determination of the effect in a federal court of a state statute authorizing such a procedure in a state court as is above mentioned, was not involved in the decision in Hollins v. Brierfield Coal & Iron Co. The language used with respect to that point was obiter dictum and was so treated by the circuit court of appeals for the eighth circuit in Darragh v. H. Wetter Manuf'g Co., 78 Fed. 7, 23 C. C. A. 609. But even a mere obiter dictum by the supreme court, if clear and definite in its purport, is not lightly to be disregarded by a subordinate federal tribunal. It is, therefore, material to ascertain the true meaning of the above quoted passage. It is suspectible of at least two possible interpretations. One of them is that a right conferred by a state statute on simple contract creditors, in the absence of a trust or lien in their favor, to proceed in equity "to obtain the seizure of the property of their debtor, and its application to the satisfaction of their claims," without first exhausting their legal remedy, cannot be enforced or recognized on the equity side of a federal court, where the direct object of the suit is to obtain payment of such claims, and judgment and execution at law would furnish a plain, adequate and complete remedy, were it not for the necessity of removing or overcoming some obstacle or difficulty in the way of the due and beneficial execution of the final process. Another possible interpretation is that a substantial right of a purely equitable character conferred by a state statute, in the absence of any trust or lien, on such creditors, founded on or having relation to their legal demands, but to be enforced by a purely equitable procedure, cannot be enforced or recognized on the equity side of a federal court, without a prior exhaustion of a remedy at law for the satisfaction of such demands, although an exhaustion of such legal

remedy would defeat and practically nullify the equitable right created by the statute. The latter interpretation is, in my judgment, inadmissible,·for two reasons. First, it would be inconsistent with the doctrine of the supreme court as to the "line of demarcation between equitable and legal remedies," and its oft repeated utterances as to the circumstances determinative of the propriety of resorting in the first instance to equitable procedure, on the one hand, or, on the other, to legal procedure. Secondly, it is fairly to be assumed that the key to the true interpretation of the dictum in question will be found in the two cases cited to support it. In Scott v. Neely, supra, the court dealt with certain provisions of a Mississippi statute relating to the chancery courts of that state, which were as follows:

"Sec. 1843. The said courts shall have jurisdiction of bills exhibited by creditors, who have not obtained judgments at law, or having judgments, have not had executions returned unsatisfied, to set aside fraudulent conveyances of property, or other devices resorted to for the purpose of hindering, delaying or defrauding creditors; and may subject the property to the satisfaction of the demands of such creditors, as if complainant had a judgment and execution thereon returned 'no property found.'

Sec. 1845. The creditor in such case shall have a lien upon the property described therein from the filing of his bill, except as against bona fide purchasers before the service of process upon the defendant in such bill."

Code Miss. 1880.

In Cates v. Allen, supra, the same statutory provisions were under consideration. In each of these two cases it was held that the right conferred by the state statute on simple contract creditors, who had not reduced their claims to judgment, did not in itself, and in the absence of a trust or lien in their favor, give them a standing for the enforcement of such statutory right on the equity side of a federal court. The effect of the above quoted sections was to enable non-judgment creditors, seeking simply to enforce payment of their own pecuniary legal demands, to procure in a state court of equity the setting aside of "fraudulent conveyances of property, or other devices resorted to for the purpose of hindering, delaying or defrauding creditors," and the application of the property to the satisfaction of their demands without first exhausting their legal remedy. A complainant, without resorting to an action at law, was authorized to secure payment of his demand by the removal of what would have been obstacles to the due and beneficial execution of final process at law, in the same manner "as if complainant had a judgment and execution thereon returned 'no property found.'" Here was a clear substitution of a single remedy in a state court of equity for an appropriate action at law and a suit in equity in aid of the legal remedy, in conflict with the rule that "such aid in the Federal courts must be sought in separate proceedings, to the end that the right to a trial by a jury in the legal action may be preserved intact." It is true that the latter of the two sections provided that the "creditor in such case shall have a lien upon the property described therein from the filing of his bill" &c.; but the statute did not create a lien prior to the filing of such bill. The statutory remedy, under the established doctrines of equity, did not fall within the class of cases requiring an exercise of equity jurisdiction for the enforcement of existing liens;

and, consequently, the statutory lien was held to have no jurisdictional force or effect in proceedings on the equity side of a federal court. The main point decided in Scott v. Neely, supra, was that a federal court, on its equity side, notwithstanding state legislation, could not take jurisdiction of a suit, in which a claim properly cognizable only at law is united in the same pleadings with a claim for equitable relief. The same provisions of the Mississippi statute were considered in Cates v. Allen, which was in all respects similar to Scott v. Neely so far as the point now under discussion is concerned; the court saying that "equitable relief in aid of demands cognizable in the courts of the United States only on their law side could not be sought in the same action, although allowable in the state courts by virtue of state legislation." In neither of these two cases was it stated, nor is any language therein employed, from which it fairly can be inferred, that a substantial right of a purely equitable character conferred by a state statute, in the absence of any trust or lien, on non-judgment creditors having pecuniary legal demands, founded on or having relation to such demands, but to be enforced by purely equitable procedure, cannot be enforced or recognized on the equity side of a federal court, without a prior exhaustion of a remedy at law for the satisfaction of such demands, where the exercise of such legal remedy would defeat and practically nullify the equitable right created by the statute. It, therefore, seems clear that the language found in the dictum in Hollins v. Brierfield Coal & Iron Co., supra, read in the light of the two cases cited in its support, must be held to mean that a right conferred by a state statute on simple or non-judgment creditors, in the absence of a trust or lien in their favor, to proceed in equity to obtain satisfaction of their demands without first exhausting their legal remedy, cannot be enforced or recognized on the equity side of a federal court, where the direct object of the suit is to obtain payment of such demands, and judgment and execution at law would furnish a plain, adequate and complete remedy, were it not for the necessity of removing or overcoming some obstacle or difficulty in the way of the due and beneficial execution of final process. Such a proposition is in nowise inconsistent with the right of this court to entertain jurisdiction on its equity side for the complete attainment in one suit of the relief sought by the complainants. There are many cases in the subordinate federal tribunals which decide that non-judgment or open creditors, in the absence of a lien or trust in their favor, must exhaust the legal remedy on their demands before proceeding in equity to set aside fraudulent conveyances or to remove other obstacles to the satisfaction of such demands. But I know of no case in which the proposition, either in terms or in substance, has been advanced that, where the object of the suit is the enforcement of a substantial right in equity created by a state statute, and the exhaustion of a legal remedy would necessarily defeat the object of the suit, such legal proceeding would furnish a plain, adequate and complete remedy for attaining the object of the suit. Such a proposition on its face is an absurdity. If, then, an open or simple contract creditor, upon whom the equitable statutory right has been conferred, has no adequate and complete rem-

edy at law for the enforcement of such right, his whole remedy for that purpose is in equity, and a federal court on its equity side has full jurisdiction, in administering it, to ascertain the facts as well as to apply the principles of law involved in the case. The suit being in equity, there is no violation of the constitutional provision securing the right to jury trial in cases at common law, and there is no necessity to exhaust either in whole or partially any remedy at law. In Morrow Shoe Manuf'g Co. v. New England Shoe Co., 57 Fed. 685, 6 C. C. A. 508, 24 L. R. A. 417, it was held by the circuit court of appeals for the seventh circuit that a creditors' bill to set aside a fraudulent conveyance or assignment of personal property of the debtor must allege that the complainant has obtained judgment on his claim and had an execution issued thereon, returned unsatisfied. On a rehearing of the same case (60 Fed. 341, 8 C. C. A. 652, 24 L. R. A. 417), it appeared that an Illinois statute provided, among other things, that "if any corporation * * * shall allow any execution or decree of any court of record, for a payment of money after demand made by the officer to be returned no property found, or to remain unsatisfied for not less than ten days after such demand * * * suits in equity may be brought against all persons who are stockholders at the time, or liable in any way for the debts of the corporation, by joining the corporation in such suits; * * * and courts of equity shall have full power, on good cause shown, to dissolve or close up the business of any corporation, and appoint a receiver therefor," &c. On the rehearing, as on the original hearing, the court, notwithstanding the state statute, held that the federal courts had no jurisdiction to entertain a creditor's bill brought by a simple contract creditor against a corporation, where the creditor had not first exhausted his legal remedy. In both of its opinions the court relied on Scott v. Neely, Cates v. Allen, and the dictum in Hollins v. Brierfield Coal & Iron Co. The portion of the Illinois statute under consideration was essentially different from the Delaware statute and was invoked for an essentially different purpose than the object sought in the present suit. While at the close of the opinion, on the rehearing, unjustifiably broad language was used, not warranted by any of the cases cited by the court, the point really involved was decided in accordance with the authorities and is in nowise inharmonious with the conclusion now reached. The circuit court of appeals for the eighth circuit in Darragh v. H. Wetter Manuf'g Co., 78 Fed. 7, 23 C. C. A. 609, rendered a decision strongly tending to support the jurisdiction of this court in this suit. The principal question of law presented was thus stated by Judge Sanborn who delivered the opinion of the court:

"Had the circuit court of the United States, sitting in Arkansas, jurisdiction to appoint a receiver and enter a decree of sale of the property of an insolvent corporation of that state, at the suit of a creditor who had not reduced his claim to judgment pursuant to the provisions of the statutes of the state of Arkansas."

The statutory provisions in Arkansas so far as material in this connection were as follows:

"Sec. 1426. Any creditor or stockholder of any insolvent corporation may institute proceedings in the chancery court for the winding up of the affairs

of such corporations, and upon such application the court shall take charge of all the assets of such corporation and distribute them equally among the creditors after paying the wages and salaries due laborers and employés.

Sec. 1427. Every preference obtained or sought to be obtained by any creditor of such corporation, whether by attachments, confession of judgment, or otherwise, and every preference sought to be given by such corporation to any of its creditors, in contemplation of insolvency, shall be set aside by the chancery court, and such creditor shall be required to relinquish his preference and accept his pro rata share in the distribution of the assets of such corporation; provided, no such preference shall be set aside, unless complaint thereof be made within ninety days after the same is given or sought to be obtained."

Sand. & H. Dig. c. 47.

Judge Sanborn, among other things, said:

"Rights, created or provided by the statutes of the states to be pursued in the state courts may be enforced and administered in the federal courts, either at law, in equity, or in admiralty, as the nature of the new rights may require. * * * An enlargement of equitable rights by the statutes of the states may be administered by the national courts as well as by the courts of the states. * * * 'A party, by going into a national court, does not lose any right or appropriate remedy of which he might have availed himself in the state courts of the same locality.' * * * Tested by these rules, the jurisdiction and power of the circuit court of the United States to seize and sell the property of this insolvent corporation, at the suit of a simple-contract creditor, under the statutes of the State of Arkansas is not doubtful. Creditors and stockholders had no right, without such a statute, to have a receiver of a corporation appointed, to have its property sold, and to have its proceeds distributed pro rata among its creditors, simply because it was insolvent. The statute created that right."

With respect to section 1427 he said among other things:

"It deprived every creditor of the right to collect his debt of an insolvent corporation by an action at law, an attachment, or a judgment. It made every lien he obtained according to the course of the common law void, if it was attacked within 90 days after it was 'sought to be obtained.' * * * Moreover, if a creditor were first required to obtain a judgment and a return of an execution nulla bona before he could proceed under this statute in the federal court, he would in effect, be deprived of the right to proceed at all. His execution could generally be levied upon sufficient property of the insolvent corporation to satisfy his debt, so that he could not obtain a return nulla bona, and therefore could not proceed in equity. Yet his judgment and execution would be futile, because some other creditor or some stockholder would certainly proceed under the statute to vacate his judgment and thus he would be deprived of all remedy against an insolvent corporation in the national courts, either at law or in equity."

But while section 1427 required the setting aside, on complaint within a specified period, of all preferences obtained or sought to be obtained by any creditor of the corporation by attachment, confession or otherwise, or sought to be given by the corporation to any of its creditors, in contemplation of insolvency, it nowhere forfeited or annulled the claim or claims secured or sought to be secured by any preference. On the contrary, it recognized the continued existence of the original claim or claims in providing that "such creditor shall be required to relinquish his preference and accept his pro rata share in the distribution of the assets of such corporation." There are two points of difference between the Arkansas statute and the Delaware statute. Both statutes create a substantial equitable right and an equitable remedy for its enforcement, but, while the

123 F.—34

Arkansas statute expressly renders nugatory such proceedings at law as are calculated to defeat the statutory right, the Delaware statute does not expressly do so. The right conferred by the latter statute is, however, wholly inconsistent with and practically would be nullified by an exhaustion of a legal remedy on the pecuniary demands of creditors. In either case an exhaustion of a legal remedy would be inconsistent with the due administration of the statute and destructive of the right thereby conferred. A second point of difference is that, while the proceedings authorized by the Arkansas statute have for their object "the winding up of the affairs" of an insolvent corporation, the Delaware statute contemplates, as before stated, proceedings which may result in the full and final administration of the assets of an insolvent corporation, and also proceedings which may result in the taking possession of such assets and their retention by the court until such time as by a prudent, economical and successful management of the affairs of such corporation it may be restored to solvency. These considerations show that the present case as strongly as, and probably stronger than, Darragh v. H. Wetter Manuf'g Co., warrants and requires a federal court in the exercise of its equity jurisdiction to entertain the bill. The bill of the H. Wetter Manufacturing Company, a simple contract creditor, was sustained on three separate and independent grounds, as follows:

"(1) Because the complainant in it had no plain, adequate, and complete remedy at law against the insolvent corporation, in the face of the state statute which declared any judgment against such a corporation void if attacked within 90 days after it was sought to be obtained; (2) because the state statute created a new right properly enforceable in equity; and (3) because its bill was sufficient in the state court, and it lost no right or remedy by its choice of the federal court for its forum."

The above case was cited with approval by the circuit court of appeals for the eighth circuit in National Surety Co. v. State Bank (C. C. A.) 120 Fed. 593, 603, in support of the proposition that "rights created and remedies provided by the statutes of the states, to be pursued in the state courts, may be enforced and administered in the National courts, either at law, in equity, or in admiralty, as the nature of the rights or remedies may require." The demurrer cannot be sustained on the ground that the complainants have not reduced their claims to judgment.

Some of the grounds of demurrer are to the effect that it does not appear that any right of action has accrued to the complainants or any of them under and by virtue of the contracts filed as exhibits; that such contracts "do not contain any promises or guaranties of payment of sums of money which it is impossible to realize and are not impracticable or impossible of fulfillment"; that such contracts "have lapsed according to their terms and constitute no claim against defendant"; that final payment of such contracts "is not within discretion of defendant"; that the bill is multifarious; and that it alleges that "defendant's assets were obtained by false representations, fraud and deception, without alleging what false representations were made, by whom and when, and also without describing the character of the fraud complained of." The objection

of multifariousness is one which addresses itself to the sound discretion of the court and in view of the nature of this case and under the circumstances cannot prevail. To hold otherwise would tend to defeat rather than promote justice. For the purpose of disposing of the demurrer, it is unnecessary to discuss at length any of the other grounds above mentioned. It may be said, in passing, that it appears from the bill and exhibits that the contracts made and issued by the defendant and held by the complainants are ambiguous, misleading and obscure, and so artfully worded as to prove a snare to the ignorant and unwary, and to put the contract-holders after paying instalments practically at the mercy of the defendant with respect to the amount of money, if any, they could recover from it. It further appears that the defendant and the complainants were not on the same plane of equality with respect to knowledge of the rules and methods resorted to by the defendant in the conduct of its business of issuing, selling and redeeming its contracts, and that the complainants were induced by fraudulent practices on the part of the defendant, consisting of false promises, and fraudulent representations as to the practical working and result of its business, to become contract-holders. And it further appears that the result was accomplished in the execution of a disreputable and overreaching scheme on the part of the defendant to defraud that large class of persons who, in the hope of realizing the enormous and well-nigh impossible profits held out by the defendant, could by deception and illegitimate means be induced to part with their money. But it is not necessary, and perhaps it would be improper, to dispose of the demurrer on the ground of fraud.

It appears from the bill and exhibits, not only that the contracts or securities held by the complainants were issued to them in Tennessee, but that the moneys paid on them by the complainants were paid to the representative or agent of the defendant in that state. Sections 2 and 3 of a statute of Tennessee, passed March 21, 1891, and approved March 26, 1891, are as follows:

"Sec. 2. Be it further enacted, That each and every corporation created or organized under or by virtue of any government other than that of this State, for any purpose whatever, desiring to own property or carry on business in this State of any kind or character, shall first file in the office of the Secretary of State a copy of its charter and cause an abstract of same to be recorded in the office of the Register in each county in which such corporation desires or proposes to carry on its business or to acquire or own property, as now required by Section 2 of Chapter 31 of Acts of 1877.

Sec. 3. Be it further enacted, That it shall be unlawful for any foreign corporation to do or attempt to do any business or to own or to acquire any property in this State without having first complied with the provisions of this Act, and a violation of this statute shall subject the offender to a fine of not less than $100 nor more than $500, at the discretion of the jury trying the case."

Acts 1891, p. 264, c. 122.

A foreign corporation is thus required to comply with the provisions of section 2 before carrying on business of any kind or character in that state. It appears that the defendant did not comply with those provisions. Section 3 not only subjects the offending corporation to a fine, but expressly provides that "it shall be unlawful

for any foreign corporation to do \* \* \* any business \* \* \* in this State without having first complied with the provisions of this Act." The doing of business by a foreign corporation in that state in violation of the statute is not included in the category of cases in which mala prohibita may have legal force and effect, notwithstanding the infliction of a penalty. The supreme court of Tennessee has, not only upheld the constitutionality of the statute, but decided that it renders contracts made in violation of it void, at least as to the offending corporation. Cary-Lombard Lumber Co. v. Thomas, 92 Tenn. 588, 22 S. W. 743; State v. Phœnix Insurance Co., 92 Tenn. 420, 21 S. W. 893. In the former case the court said:

"This Act of 1891, Chapter 122, has, by this Court, been held to be a valid and constitutional law. State v. Phœnix Fire Insurance Co., 92 Tenn. 420, 21 S. W. 893. After this Act went into effect, March 21, 1891, by its terms and provisions this foreign corporation was not authorized to do any business, or to own any property in Tennessee until the provisions of the Act were complied with. It could, therefore, after that Act was passed, own no property and make no legal contract in Shelby County, where this property was situated, until the abstract or memorandum was recorded in the Register's office of that county, which, as before stated, was the twenty-eighth of July, 1891. All contracts made by it and all business transacted by it in Shelby County between these dates were illegal, and no rights of property or of action could arise out of the same."

On a rehearing the court said:

"By the very terms of the Act of 1891, Chapter 122, Section 3, it is made unlawful for any corporation to do, or attempt to do, any business, or to own or acquire any property in the State without having first complied with the provisions of the statute. Every transaction or contract, express or implied, made by a foreign corporation after the pasage of this act, March 21, 1891, and before its charter was filed and memorandum recorded as the law provides, was illegal, and no rights or remedies can be predicated thereon in favor of the company."

There can be no question of the validity of the Tennessee statute under the constitution and laws of the United States in its application to this case; for the defendant in doing business in that state was not in governmental employ, nor engaged in commerce, interstate or foreign. Paul v. Virginia, 8 Wall. 168, 19 L. Ed. 357; Ducat v. Chicago, 10 Wall. 410, 19 L. Ed. 972; Doyle v. Continental Ins. Co., 94 U. S. 535, 24 L. Ed. 148; Phila. Fire Association v. New York, 119 U. S. 110, 7 Sup. Ct. 108, 30 L. Ed. 342; Pembina Mining Co. v. Pennsylvania, 125 U. S. 181, 8 Sup. Ct. 737, 31 L. Ed. 650; Horn Silver Mining Co. v. New York, 143 U. S. 305, 12 Sup. Ct. 403, 36 L. Ed. 164; Ashley v. Ryan, 153 U. S. 436, 14 Sup. Ct. 865, 38 L. Ed. 773; Hooper v. California, 155 U. S. 648, 15 Sup. Ct. 207, 39 L. Ed. 297; New York State v. Roberts, 171 U. S. 658, 19 Sup. Ct. 58, 43 L. Ed. 323; Waters-Pierce Oil Company v. Texas, 177 U. S. 28, 20 Sup. Ct. 518, 44 L. Ed. 657. The contracts held by the complainants, being unlawful and void, at least so far as any contractual rights on the part of the defendant are concerned, must be held to be unlawful and void in toto as between the parties. The reciprocal obligations between the parties disclosed therein and the interdependence of their different provisions preclude the possibility of any combination of nullity on one side and validity on the other.

It appears from the bill that the complainants entered into the contracts "in good faith, and for the legitimate purposes of investment for profit," and further that they were not aware that the defendant was violating the laws of Tennessee. The complainants were not chargeable with knowledge of the fact that the defendant had failed to comply with the requirements of the Tennessee statute, but were innocent parties to unlawful and void contracts. They were entitled to recover from the defendant all moneys paid by them to it on account of the prohibited contracts. They are creditors of the defendant in the amount of such moneys less such portion thereof as may have been repaid by the defendant and would be entitled to recover their claims on the common count in assumpsit for money had and received, and such action would not be in affirmance, but in disaffirmance of the contracts. While several alternative grounds are assigned in support of the bill, it prays that the complainants and all other creditors may be decreed to have a lien upon the assets of the defendant "for the amounts that they have paid into said company." This is a distinct repudiation of the contracts. Morawetz in his Law of Private Corporations, § 125, well lays down the rule as follows:

"If either party to a contract which cannot be enforced on account of some prohibition of the law has received benefits under the contract, he must account for such benefits to the other party. In such case the maxim, 'in pari delicto melior est conditio possidentis,' applies only if the contract involved some immorality, or if the courts must, for reasons of public policy, refuse to help either party. And if either one of the parties was innocent, he may compel the guilty party to account for whatever he has received under the contract, though the contract itself be wholly invalid and unenforceable."

The doctrine here laid down by Morawetz is supported by controlling authority. Spring Co. v. Knowlton, 103 U. S. 49, 26 L. Ed. 347.

It also appears that two of the complainants are stockholders of the defendant, each to the par amount of $1,000 and, as such, are entitled under the Delaware statute to apply for the appointment of a receiver of the defendant as an insolvent corporation which possesses assets in excess of the jurisdictional amount required in a federal court.

In view of the foregoing considerations the demurrer must be overruled and the defendant required to plead or answer by Thursday, the eighteenth day of June next.