# DREXEL *v.* BERNEY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE SOUTHERN DISTRICT OF NEW YORK.

Argued May 11, 1887. — Decided May 27, 1887.

In order to justify a resort to a court of equity for the enforcement of an equitable estoppel, some ground of equity, other than the estoppel itself, must be shown whereby the party entitled to the benefit of it is prevented from making it available in a court of law; and, that it must be made to appear that forms of law are being used to defeat that which, in equity, constitutes the right.

When in a suit in equity brought to restrain the respondent from enforcing against the complainant in an action at law a demand against which the complainant claims to have an equitable defence which is set forth in the bill, it appears to be altogether uncertain whether the complainant can avail himself in the action at law of the defence asserted in the bill, the bill should not be dismissed upon general demurrer, but the respondent should be required to answer.

B., a citizen of the United States, died in France, having in Europe, lodged with bankers in London and elsewhere, a large amount of personal securities. He left a will naming his widow, his brother J. of Alabama, one S., a citizen of France, and others as executrix and executors. With the knowledge and consent of the widow and of the other parties interested J. caused the will to be admitted to probate in Alabama, ob-

tained a decree that the decedent was domiciled there, and letters testamentary were issued to J. only. The Surrogate of New York, upon this probate, issued ancillary letters testamentary to J.; and, under the same probate, S., likewise with the widow's consent, received a power of attorney from J. as executor to take possession of the property in Europe and administer upon the estate there. In pursuance of this authority he, in company with the widow, proved the will in common form in England and took out letters testamentary there in the name of himself and the widow, and took possession of the property, among which were registered bonds of the United States to a large amount. These bonds were sent by him to D. in New York (the plaintiff in error) to be sold and the proceeds to be invested in coupon bonds of the United States. D. made this exchange, and transmitted the coupon bonds to S. as directed. S. made a settlement with J. as executor, and afterwards died; and after his death it appeared that he had diverted the coupon bonds to his own use. The widow then took out letters from the Surrogate in New York, in her own name, ancillary to the probate in England, and thereupon brought an action at law in the Circuit Court of the United States for the Southern District of New York, in her name, as sole executrix under and by virtue of the letters so issued to her, against the complainants for conversion of said United States bonds, alleging that the decedent was domiciled in France, and the Alabama probate was invalid for that reason, and that these letters testamentary to her were conclusive on D. so far as the right to maintain the action was concerned. D. thereupon filed a bill in equity against F., in which the relief sought was an injunction against setting up or claiming in the action at law or elsewhere that the decedent was not domiciled in Alabama, that his will was not duly admitted to probate there, and that the administration thereunder of J. as sole executor and S. as his attorney were not valid and binding, and against using in support of such allegations the ancillary letters testamentary, which defendants had fraudulently and unlawfully procured to be issued to or in the name of the widow, discovery of the facts within defendants' knowledge, &c. On general demurrer this bill was dismissed. *Held*, that the demurrer should have been overruled, and the defendant required to answer.

THIS was a bill in equity filed by the appellants, some of whom are citizens of Pennsylvania and others of New York, against the appellee, who is an alien, a citizen of the Republic of France, and William Berney, a citizen of Texas, and Saffold Berney, Chollet Berney, Robert Berney, Phillipa Rousseau, Sophia White, Ann M. Ball, Phillipa E. Harley, Laurent B. Hallonquist, Robert L. Hallonquist, and William C. Hallonquist, citizens of the state of Alabama. Of these defendants, none were served with process or appeared, except the appellee,

Louise Berney. The cause was heard in the Circuit Court on a general demurrer filed by the appellee to the bill. The demurrer was sustained, and the bill dismissed for want of equity. The complainants appealed.

The following statement of the case, as made by the bill, is taken from the brief filed by counsel for the appellants:

" The bill alleges in substance:

" 1. That said Robert Berney, the decedent, made his will November 2, 1864, at Croydon, England, whereby he bequeathed his residuary estate to his executors therein named as trustees and upon trusts, among others, for the benefit of his widow, the defendant Louise Berney, and of the other persons named as defendants; and afterwards, on the 25th of September, 1874, a codicil thereto, making changes in some of the bequests in his will, and appointing as executors and trustees of his will the defendant Louise Berney; also James Berney, his brother; a Mr. Messier de St. James, of Paris, France, and John Drummond and William Drummond.

" 2. That Robert Berney died at Paris, France, November 19, 1874, leaving him surviving his widow, the defendant Louise Berney, his said brother, James Berney, and nephews and nieces, who are named as defendants in the bill of complaint. His widow was a native of France, and was with him at the time of his death, but his said brother James and his nephew and nieces were all citizens and residents of Montgomery County, Alabama; said St. James was a resident of France, and the Messrs. Drummond, of England. The decedent left personal estate in France, England, and the United States.

" 3. At the time of his death, Robert Berney, the decedent, was a citizen of the United States, who had lived abroad for some years, but had never acquired a domicile in France under or in accordance with its laws. Upon his death his widow, the defendant Louise Berney, presented the will and codicil of the decedent to the proper judicial authority in France, and, in accordance with French law, the administration of the estate was committed to a notary by competent judicial authority, December 4, 1874.

"4. Subsequently, and before anything else was done, and on the application of said James Berney, the brother of decedent, and one of his executors, the will and codicil were formally admitted to probate, and letters testamentary thereon issued to said James Berney alone, by competent judicial authority at Montgomery, Alabama, on the 8th of February, 1875, the decree of the Alabama court being that the decedent was domiciled at Montgomery, Alabama, and that it had full jurisdiction in the premises. All of the heirs at law and next of kin of the decedent, except the widow, the defendant Louise Berney, were at that time citizens and residents of Alabama, and by the laws of Alabama such probate and issue of letters testamentary cannot be impeached collaterally, and are conclusive upon all persons and parties.

"5. That said James Berney, having been thus constituted sole executor, gave a full power of attorney to said St. James, empowering him, among other things, to reduce the decedent's estate to possession, and to sell any and all property, &c. About the same time and on the 9th of March, 1875, said James Berney, being thus sole executor by reason of the Alabama probate, obtained the issue to himself, by the Surrogate or Court of Probate in the city of New York, of ancillary letters testamentary, based upon the Alabama probate. This adjudication is in due form, and also remains unimpaired and in full force. All of the said proceedings of said James Berney were known to the defendant Louise Berney and the other persons named as executors, as well as to the legatees under the will, the other defendants in the bill of complaint.

"6. That at the time of the decedent's death, certain evidences of title of the personal property left by him were in his possession at Paris, France, and the purpose and intention of the proceedings above mentioned were to secure immunity of the decedent's estate from taxation in France, and to provide for the due and lawful administration of the assets, which were then actually in the possession of the widow, the defendant Louise Berney, and said St. James, and by the joint action of the sole qualified executor, said James Berney,

said St. James, and said defendant Louise Berney, before the notary to whom the matter had been so judicially committed in France, as aforesaid, the whole estate and its administration was entrusted to said St. James, as attorney for said James Berney, executor, with the knowledge and approval of all parties in interest, including the defendants. Formal proceedings were afterwards had before the notary at Paris, on the 30th and 31st of March and the 3d and 4th of May, 1875, and afterwards on the 11th of June, 1875, and on those dates formal documents or records were duly executed by the parties before the notary: the first, by the widow, the defendant Louise Berney, and said St. James; and the second, by the same persons in connection with said James Berney, the qualified executor, in person. At these proceedings and in the notarial instruments or records it was formally evidenced and declared that the decedent was at the time of his death domiciled at Montgomery, Alabama, that the probate of the will in Alabama was regular and valid, and that said James Berney was the sole qualified executor, and his power of attorney substituted said St. James in all the executor's functions and rights, and the defendant Louise Berney acknowledged receipt of the legacies given to her by the will from the administration of the estate thus constituted. By the laws of France, neither the defendant Louise Berney, nor any other of the persons named as executors in the will, nor any one claiming under them, are permitted to assert the contrary of any of the matters thereby established.

" 7. That among other assets the decedent left $200,000 in United States bonds, $12,500 in stock of the United States Mortgage Co., $58,200 in stock of the New York Central & Hudson River Railroad Co., £8000 in bonds of the New York & Canada Railroad Co., £3000 bond and mortgage on real estate in England, and moneys on deposit with bankers at London. Of these items said James Berney, in person, took possession of and sold the $12,500 in stock of the United States Mortgage Co. and the $58,200 in stock of the New York Central & Hudson River Railroad Co. On the 15th of June, 1875, the defendant Louise Berney and said St.

James procured proof of the will and codicil in common form, and the issue of letters testamentary to them by a competent court in England, and having taken possession of the £8000 in bonds of the New York & Canada Railroad Co., and the £3000 bond and mortgage on real estate in England, by virtue of their English letters got in and converted into money the assets in England, as to the last-mentioned item, an instrument having been jointly executed by all three of the parties, Louise Berney, St. James and James Berney. All these proceedings were had without objection on the part of any of the defend-ants. The $200,000 of United States bonds were sent to this country, and by agents of said St. James at the city of New York presented to complainants, with directions to change the bonds from registered to bearer bonds by selling the registered bonds, and with the proceeds buying bearer or coupon bonds of the same issue, the only method of effecting such exchange. The agents of said St. James furnished to the officers of the United States Treasury satisfactory evidence of their authority to transfer the bonds, and upon which the bonds were trans-ferred, and the complainants sold the registered bonds and with the proceeds bought $195,000 of coupon bonds, and with a sum in money representing the difference delivered the same to the agents of said St. James, who, in their turn, delivered the same to said St. James himself after he and the defendant Louise Berney had taken out their letters testamentary in England.

" 8. That legacies given by the will and codicil to several of the defendants were duly received by them from James Ber-ney or said St. James under the administration of the estate so established, and during all the times mentioned said James Berney was the agent for, and actual guardian of, the defend-ants, and had full knowledge of all the aforesaid transactions.

" 9. That in the year 1880 said James Berney sent his son, the defendant Saffold Berney, to France, who then and there, acting as attorney and agent for his father in his quality of executor, and for himself and defendants as legatees, instituted judicial proceedings against said St. James for an account of his administration of the decedent's estate, and finally received

from said St. James, in full satisfaction and discharge of his liability to them, certain property. Because St. James has since died, and because of the laws and customs of France, complainants cannot ascertain the precise details of the transaction.

"10. That the defendants now claim that said St. James diverted the $195,000 in coupon bonds and the money so received by him in exchange for the $200,000 United States registered bonds, and that the Alabama probate so obtained by said James Berney was invalid, because, as they now assert, the decedent was domiciled in France. The defendants have confederated together to assert and maintain this claim by means as follows: They have obtained from the Surrogate of New York County a second issue of ancillary letters testamentary to the defendant Louise Berney alone, based upon the false representation that the decedent's will had been admitted to probate in England in such manner as to justify the issue of ancillary letters testamentary here, and the false representation that there were unadministered assets in New York, and the fraudulent suppression of the facts concerning the former issue of letters ancillary to James Berney, founded upon the Alabama probate, and thereupon have brought an action at law in the Circuit Court of the United States for the Southern District of New York, in the name of said defendant, Louise Berney, as sole executrix under and by virtue of the letters so issued to her, against the complainants, for conversion of said $200,000 United States bonds, and wherein they allege that said decedent was domiciled in France, and the said Alabama probate was invalid for that reason, and that the letters testamentary so issued to the defendant, Louise Berney, are conclusive upon the complainants, so far as her right to bring and maintain said action is concerned. Complainants are not permitted by law to procure the cancellation of said letters, or to contest the validity thereof. In view of the foregoing, complainants insist that the defendants are estopped in equity from now asserting against them that said decedent was domiciled elsewhere than at Montgomery, Alabama, or that the proceedings of the executors at Paris are not binding upon

them. Complainants also allege that the several matters and things above mentioned may not be pleaded and do not constitute a defence to the action at law, &c.

"11. That, in addition to the action at law in the Federal court before referred to, the defendants have brought another action in the Supreme Court of the state of New York in their own names as plaintiffs against the complainants, wherein they make the like claim as to Robert Berney's domicile and the Alabama probate of his will, and assert that they are the owners of the $200,000 United States bonds, and that complainants have converted them, &c.

"12. That, according to the French law, the defendant, Louise Berney, as the widow of the decedent, would have been entitled to a certain portion of his estate, had he been domiciled in France. The portion she would have received under the French law, had the right been claimed or asserted by her, was much more than the value of the $200,000 of United States bonds, and, consequently, she cannot maintain the action at law in the right or interest of her codefendants, if it be true that decedent was domiciled in France, until an accounting shall have been had between her and the legatees, under the will.

"13. And that the defendants are all beyond the jurisdiction of the court, and the defendant Louise Berney is an alien and resident of France, where her testimony cannot be taken by any ordinary process because of the laws of France, that the facts are within the knowledge of defendants and a discovery is necessary, &c., &c.

" The relief sought was an injunction against setting up or claiming in the action at law or elsewhere that the decedent was not domiciled at Montgomery, Alabama; that his will was not duly admitted to probate there; and that the administration thereunder of said James Berney, as sole executor, and said St. James, as his attorney, were not valid and binding, and against using in support of such allegations the ancillary letters testamentary, which defendants have fraudulently and unlawfully procured to be issued to or in the name of the defendant, Louise Berney, discovery of the facts within defendants' knowledge, &c."

*Mr. Wayne Mac Veagh* and *Mr. C. E. Tracy* for appellants.

*Mr. Franklin .B. Lord* (*Mr. George De Forest Lord* was with him on the brief) for appellee.

I. The bill does not seek to enjoin the defendants from prosecuting. any actions ·to recover from the complainants the United States bonds, or their value, but simply to enjoin the defendants from asserting in such action·or actions, that Robert Berney was not domiciled in Alabama, or that his will was not duly proved, and letters testamentary, duly issued in that county, or that the power of attorney to St. James was not valid, or from using in support of the claim that Robert Berney was domiciled in Paris the proceedings before the Surrogate in New York County.

The bill does not admit that Robert Berney was not domiciled in Alabama, but on the contrary, insists that the allegations of the defendants in that regard are false, nor does it anywhere appear that the complainants would have any difficulty in proving in any suit brought against them, what they claim to be the true facts in respect to such domicil. On the contrary, the complainants insist that in the two judicial proceedings, namely, the proceeding before the notary in France, and before the Probate Court· in Alabama, it has been determined that Mr. Berney was domiciled in Alabama, and that these adjudications are binding. The only reason they assign for seeking the relief on the equity side of the court is, that they should not be put to the expense of defending the actions brought by the defendants.

The matter in dispute is therefore not the bonds or their value, but the expense to the complainants of defending actions at law. As it does not appear that such expense will exceed $5000, the case is not appealable to this court.

II. The only ground on which the complainants seek relief is that the defendants, by their conduct, are estopped from asserting that Robert Berney was not domiciled in Montgomery County, Alabama, or that James Berney, as executor under the probate of the will, and the letters issued to him in Alabama, and St. James as his attorney, had not the power to

dispose of the bonds mentioned in the complaint, and that on account of an alleged fraudulent concealment by Saffold Berney, upon his application for ancillary letters to the Surrogate of New York County, to be issued to Louise Berney, the defendants should be precluded from using the proceedings before said surrogate as evidence of Robert Berney's domicil.

If these matters could be availed of by the complainants, as matter of defence in the actions at law brought against them, the complaint was rightly dismissed, for they had on that assumption, "a plain, adequate and complete remedy at law."

While the doctrine of equitable estoppel originated and was promulgated by courts of chancery, it is now recognized and enforced as liberally in courts of law as in courts of equity. *Dickerson* v. *Colgrove*, 100 U. S. 578.

The complainants, therefore, can avail themselves of the estoppel, even if it be of the character commonly known as equitable estoppel, as a defence at law, and there is no necessity for their seeking affirmative relief in equity, nor does the alleged fraud in obtaining letters testamentary to Madame Berney, furnish any ground for equitable interference, for the allegations in such proceedings only establish jurisdiction in the absence of fraud, and fraud, if it exists as the complainants allege, will undoubtedly be available to them in any action in which the proceedings may be used in evidence. New York Code of Procedure, § 2473, cited by appellant.

In the Federal courts the proceedings under which letters testamentary or of administration are granted are not conclusive evidence even of the fact of the death of the alleged testator or intestate. *Lavin* v. *Emigrant Industrial Savings Bank*, 18 Blatchford, 1.

III. The complainants have not made out a case of equitable estoppel. The very essence of such an estoppel is, that the party seeking to set it up should have done or omitted to do something relying upon statements or conduct of the adverse party, justifying him in the belief that a certain state of facts existed, which, on account of such action on his part, the other side should not be allowed to gainsay. The complainants allege that the defendants have by their acts conceded

that Robert Berney was domiciled in Alabama, but it does not appear that such action ever came to the knowledge of the complainants, or that their actions had been in the slightest degree affected by the proceedings in France, or by the part, if any, taken by the defendants therein.

These proceedings in France furnish no defence to the action, or else constitute an estoppel of record. The complaint, instead of showing an equitable defence, which cannot be asserted at law, shows facts which, if they constitute a defence at all, are rather of legal than of equitable cognizance.

IV. The bill cannot be sustained as one for discovery in aid of a defence at law, because the complainants have propounded no interrogatories as required by the rules when a discovery is desired. *Bailey Washing Machine Co.* v. *Young,* 12 Blatchford, 199, 200. Equity Rules, 40, 41.

An application to restrain or interfere with an action at law is addressed to the discretion of the equity judge. Conceding for the moment that the circuit judge might have entertained the bill, if the convenient and orderly administration of justice would have been promoted by his so doing, it is insisted that such would not have been the case. If the bill had been sustained, the court would have had to hear the cause upon the question of estoppel alone, or else to have dragged in and determined the other issues involved in the legal actions. If the latter course were adopted, it would be necessary to dismiss the complaint in this case, unless the complainants establish an equitable defence, for otherwise, the defendants would have been deprived of a trial by jury in a purely common law action. To hear the case on the question of estoppel alone would be to try the controversy by piecemeal. All this is avoided by compelling the complainants to assert in the common law actions a defence, which, if a defence at all, is perfectly available to them at law.

Mr. Justice Matthews, after stating the case as above reported, delivered the opinion of the court.

It does not as distinctly appear from the bill itself as from the statement, that the first action at law, referred to, was

brought and is pending in the Circuit Court of the United States for the Southern District of New York. It may, however, perhaps be fairly inferred from the allegations of the bill that such is the fact, and as it has been so assumed in the argument of the cause, no question is made upon the sufficiency of the bill in that respect. The only ground here urged in support of the decree and of the demurrer to the bill is, that the complainants, upon the case made in the bill, have a complete and adequate defence at law, and that, consequently, they do not bring themselves within the jurisdiction of a court of equity.

If the decedent, Robert Berney, at the time of his death was domiciled in France, and not in Alabama, the letters testamentary issued to his brother, James Berney, as executor in Alabama, were void, and the authority given by James Berney to St. James by the power of attorney was also invalid, and the payment made by the appellants to St. James of the proceeds of the sales of the bonds which belonged to the estate does not bind the rightful executor or protect the complainants. The ground of the bill, therefore, is, that, upon these facts, an action at law may be successfully maintained by the appellee as executrix of Robert Berney against the complainants for the value of the bonds. The question is, whether the other facts set up in the bill furnish a complete and adequate defence to such an action at law, or whether they establish a right in equity to relief. The rule as laid down by this court in *Boyce's Executors* v. *Grundy*, 3 Pet. 210, 215, is, that "it is not enough that there is a remedy at law. It must be plain and adequate; or, in other words, as practical and efficient to the ends of justice and its prompt administration as the remedy in equity." And, as appears by that case, the principle is as applicable in cases where a complainant resorts to a court of equity to enforce a defence to an action at law, as where he seeks by a bill in equity other relief. This is illustrated by the case of *Grand Chute* v. *Winegar*, 15 Wall. 373, 377. That was a case of a bill in equity by a municipal corporation to procure the cancellation of bonds on which an action at law had been brought, alleged to be void in the hands of the

holder. The court said: "A judgment against Winegar in the suit brought by him would be as conclusive upon the invalidity of the bonds, would as effectually prevent all future vexatious litigation, would expose the fraud, and prevent future deception as perfectly and thoroughly, as would a judgment in the equity suit. Under such circumstances, there is no authority for bringing this suit in equity."

The ground of relief alleged in the present bill is, that by her acts and conduct the appellee has estopped herself, as against the complainants, from asserting any fact which annuls the executorship of James Berney under the Alabama probate, and the authority of St. James as his attorney in fact. Estoppels of this character, as distinguished from estoppels by record or by deed, are called equitable estoppels. It is not meant thereby that they are cognizable only in courts of equity, for they are commonly enforced in actions at law, as was fully shown in *Dickerson* v. *Colgrove*, 100 U. S. 578. But it does not follow, because equitable estoppels may originate legal, as distinguished from equitable rights, that it may not be necessary in particular cases to resort to a court of equity in order to make them available. All that can properly be said is, that in order to justify a resort to a court of equity, it is necessary to show some ground of equity other than the estoppel itself, whereby the party entitled to the benefit of it is prevented from making it available in a court of law. In other words, the case shown must be one where the forms of the law are used to defeat that which, in equity, constitutes the right. Such a case is one for equitable interposition.

A close analogy is found in the doctrine of equitable set-off. The rule regulating the right of set-off is the same both at law and in equity, and yet there are many cases where set-offs not permissible at law may be enforced in equity. As was said by Mr. Justice Story in *Greene* v. *Darling*, 5 Mason, 201, 209: "Now, the general rule in equity is, like that at law, that there can be no set-off of joint debts against separate debts, unless some new equity justify it. Such an equity may arise under circumstances of fraud; or where the party seeking relief is only a surety for a debt really separate; or where

there are a series of transactions in which joint credit is given with reference to the separate debt." And at page 212: "Since the statutes of set-off of mutual debts and credits, courts of equity have generally followed the course adopted in the construction of the statutes by courts of law; and have applied the doctrine to equitable debts; they have rarely, if ever, broken in upon the decisions at law, unless some other equity intervened which justified them in granting relief beyond the rules of law, such as has been already alluded to." In *Downer* v. *Dana*, 17 Vt. 518, 523, Judge Redfield said: "Although a court of equity will not, any more than a court of law, allow a set-off of joint debts against separate debts, yet there are many exceptions. One important exception is where the debts are in reality mutual, although not so in form, as where one of the joints debtors is a mere surety." In *Smith* v. *Felton*, 43 N. Y. 419, the court said: "Equity will look through the form of the transaction, and adjust the equities of the parties with a view to its substance, rather than its form, so long as no superior equities of third persons will be affected by such adjustment." In such cases, equity looks to the beneficial ownership of the debt. Kerr on Injunctions, 64, chap. 4, § 5.

The principle of these cases applies, we think, to the present. The ground of equity jurisdiction asserted in the bill is that the estoppel relied on would be good at law as against Louise Berney in her individual right, but not against her in her representative capacity as executrix of the estate of her deceased husband under the New York letters testamentary; but that it is good against her in equity in that capacity to the extent of her own individual interest, and the interest of any distributees of the estate equally bound thereby, in the fund which she is seeking as executrix at law to recover. She sues at law as executrix for the purpose of recovering a sum in dispute for the general benefit of the estate to be applied to the payment of creditors, legatees, and other distributees. Under the law of France as widow, and under the will as beneficiary, she is individually entitled to some as yet undetermined portion of the assets of the estate, after the pay-

ment of creditors, if there are any unpaid. Others named as defendants, similarly bound by the transactions relied upon as an estoppel, are also beneficially interested in the distribution of the estate in some yet unascertained proportions. There may be others entitled to some portion of the estate on distribution, in respect to whom the defence relied upon does not apply. As between them and the appellee and other beneficiaries, it may be necessary to have an account of what they have received, and of what they are still to receive, and an adjustment upon equitable grounds, based on the right of the appellants to enforce the recognition of their payment to St. James as an agent whose authority the appellee and some of the other distributees cannot in equity be allowed to question. In the action at law, the appellee represents the whole estate, and every one interested in its collection and distribution. It may very well happen, therefore, that in the action at law the right to prove the facts on which the estoppel rests may be questioned and denied on the ground that the plaintiff in the action at law is not bound as executrix for what she did and assented to in her character as widow and legatee.

On this ground, therefore, and because it appears to be altogether uncertain whether the appellants can avail themselves in the action brought against them at law of the defence asserted in this bill, and admitted by the demurrer to be true, we think the demurrer should have been overruled, and the defendant required to answer. For error in this particular,

*The decree of the Circuit Court is reversed, and the cause remanded, with directions to take further proceedings therein as equity and justice may require. It is accordingly so ordered.*