## TWIN CITY POWER CO. v. BARRETT.

(Circuit Court of Appeals, Fourth Circuit. November 5, 1903.)

### No. 490.

1. EQUITY JURISDICTION—ADEQUATE REMEDY AT LAW.

Complainant, who had secured options on lands adjoining a river for the purpose of developing a water power, transferred them to others, who were securing lands for the same purpose, under a contract by which such persons were to organize a corporation to complete the work and to deliver to complainant in payment a certain amount in its bonds by a date fixed, or in default to return the options; the issue of bonds not to exceed a certain per cent. of the amount expended in the improvement. The bonds not having been delivered, and a demand for the return of the options having been refused, a short time before the options were about to expire complainant filed his bill asking the appointment of a receiver to complete the purchases thereunder for his protection, alleging the insolvency of the corporation to which the options had been assigned. *Held*, that the bill presented a case within the jurisdiction of a court of equity, and that, having obtained jurisdiction for one purpose, it was properly retained to grant full relief.

2. CONTRACTS—PERFORMANCE.

Complainant transferred options to buy land to certain of the defendants under a contract which provided that he should receive a cash payment, and also bonds of a corporation to be organized by such defendants to take and improve the property, the bonds to be secured by a first mortgage, and the issue not to exceed 80 per cent. of the amount invested in the property. Failing to deliver the bonds, defendants were to pay the amount in cash, or, in default of that, to return the options and forfeit the payment made, settlement to be made by a certain date, and time being made of the essence of the contract. At the expiration of the time the corporation had been organized, but had not completed the purchase of the lands nor issued any bonds. A demand for the cash payment or the return of the options was refused. *Held*, that a delivery or tender to complainant of an accepted order on the treasurer of the company for the delivery of bonds when they should be issued, the proposed issue being far in excess of the amount the company had invested, was not a compliance with the contract, and that complainant was entitled to enforce the cash payment.

3. SAME—ACTION FOR BREACH—AMOUNT OF RECOVERY.
   The price stipulated in the contract fixed the value of the options as between the parties, including the company which succeeded to the rights and liabilities of the purchasers thereunder, and determined the amount which complainant was entitled to recover.

4. BOND FOR DISCHARGE OF RECEIVER—LIABILITY OF SURETY.
   A court of equity has power to accept from a defendant, as a condition of the discharge of a receiver for its property, a bond conditioned for the performance of the final decree, and to render judgment thereon against both principal and surety for the amount of complainant's ultimate recovery.

Appeal from the Circuit Court of the United States for the District of South Carolina, at Charleston.

For opinion below, see 118 Fed. 861.

This was a suit in equity, which grew out of the following facts:

Thomas Barrett, Jr., a citizen of Georgia, secured certain options from owners on both sides of the Savannah river in the states of South Carolina and Georgia for the purpose of obtaining a site upon which to erect a plant for the purpose of utilizing the water power of said river at a point near Ring Jaw Shoals. After a time he discovered that one W. H. Chew, representing G. E. Fisher, of New York, was engaged in a similar purpose, and, as the efforts of the two men were in conflict with each other, a conference was held between Mr. Chew and Mr. Barrett at the office of the latter, as a result of which the following agreement was entered into between them:

"Augusta, Ga., June 1, 1900.

"In consideration of five thousand dollars in cash, represented by draft of W. H. Chew, trustee of G. E. Fisher, of 37 Wall street, New York, for $5,000.00, and the agreement of said trustee to have delivered to me fifteen thousand dollars of bonds as hereinafter stated, total consideration twenty thousand dollars, I, Thomas Barrett, Jr., hereby agree to sell to said trustee all options owned by me and expiring May 1st, 1901, for the purchase of land fronting on the Savannah river, which stand in my name, and which are of record in Edgefield county, S. C., and Lincoln county, Ga., to which reference is made.

"This sale is upon the condition that said trustee and said G. E. Fisher, and his associates, shall proceed to organize an incorporation to develop a water power of not less than 15,000 horse-power, at or near Ring Jaw Shoals, on the Savannah river, within the space of eight (8) months from this date, and, upon the completion of said incorporation to deliver me first mortgage bonds of the corporation for fifteen thousand dollars ($15,000); said corporation not to issue bonds in excess of 80 per cent. of the amount paid, laid out and expended in the purchase of the various tracts of land and the land covered by these options, and in the development of said water power, or that said trustee and said G. E. Fisher and his associates shall have the privilege of paying to me $15,000.00 in cash instead of bonds.

"It is distinctly understood that if said draft for five thousand dollars is not paid on presentation, then this instrument is absolutely null and void, and, that if said money is paid and the corporation is not organized and the bonds hereinbefore specified, issued and delivered to me by January 1st, 1901, or fifteen thousand dollars cash paid in lieu thereof, time being of the essence of the contract, then this sale shall be null and void, and the sum of five thousand dollars paid to me at this time shall not be accounted for by me, but shall be retained by me as the amount of liquidated damages agreed upon between the parties hereto for a violation of the said contract, and all options to be returned to me the same as if this sale had not been made.

"W. H. Chew, Trustee.
"Thomas Barrett, Jr."

In accordance with this agreement, Barrett transferred and assigned the options (some 15 in number) referred to in the agreement to Chew. Subsequently the Twin City Power Company was organized under the laws of

South Carolina (the date of charter being August 7, 1900), and it thereafter took the place of Chew and of his principal, Fisher. Subsequent correspondence was had between the complainant on the one hand and Messrs. Chew and D. M. MacKaye (the latter being treasurer of the Twin City Power Company) on the other, in the course of which it was made to appear that the date "January 1, 1901," fixed in the contract for the delivery of the bonds, should have been February 1, 1901. This correspondence develops the fact that complainant always insisted upon a strict and literal compliance with the terms of the contract as to delivery of bonds of the character specified in the contract at the time specified (or intended so to be) therein, or the payment of the $15,000 in cash. On January 25, 1901, MacKaye, the treasurer of the company, wrote to Barrett that, owing to delays in securing legislation and acquiring property, the company would be obliged to give him an order for the delivery of the bonds to complainant at the earliest date bonds and mortgage were ready for issue by the trustee. To this letter Barrett replied on January 28, 1901, declining to accept such order, and concluding, "I therefore beg to insist that you comply with the terms of the contract, and that if the bonds are not ready for delivery on January 31, I shall expect you to remit me fifteen thousand dollars in cash." On January 30, 1901, an order was sent to Barrett, signed by Chew as trustee, directed to MacKaye, as treasurer of the Twin City Power Company, for the delivery to complainant of $15,000 first mortgage 6 per cent. gold bonds of the company as soon as said bonds were certified to by the trustees of the mortgage and ready for delivery, which order was accepted by MacKaye as treasurer. The letter inclosing this order was sent by registered mail to Barrett at Augusta, and was receipted for by his clerk on February 1, 1901. Barrett did not reply to the letter, but on March 21, 1901, he went to New York, and on March 22d, made demand upon Chew, as trustee for G. E. Fisher, and upon Chew and MacKaye, as officers of the Twin City Power Company, for the return and delivery of the options transferred to Chew, as trustee for Fisher, and on the next day a similar demand was made personally upon G. E. Fisher, which demands were refused. The admission was made that the options had been transferred to the Twin City Power Company, but it appears that the formal transfer by Chew was not made until March 23, 1901, the day after the demand was made by Barrett for the return of the options. It appears that up to this time only about $40,000 to $50,000 had been expended upon the property and expenses of organization and administration; that the stock of the Twin City Power Company was $1,000,000; and that the mortgage then in course of preparation, and under which the bonds were to be issued which it was contemplated to tender to Barrett (and which were afterwards so tendered) was for an equal amount, viz., $1,000,000.

Shortly after this visit of Barrett to New York, and after the refusal of all the parties to return the options, and after Barrett had ascertained from the records that the options for lands in South Carolina had been formally assigned to Twin City Power Company by Chew individually and as trustee, to wit, on March 30, 1901, he filed his bill in the Circuit Court of the United States for the District of South Carolina (which bill he amended April 16, 1901) against Chew individually and as trustee, Fisher, MacKaye, Twin City Power Company, and the parties who had given the options for lands in South Carolina, in which he alleged all or most of the foregoing facts, and it appears from the bill and exhibits therewith that all of the said options would expire May 1, 1901. In his bill he charges on information that the Twin City Power Company is insolvent, and avers that, even if not insolvent, it is the purpose of its promoters, agents, and officers to allow the options obtained from complainant to lapse, so as to defeat the rights of complainant and any payment due him for the purchase thereof. He prays that, inasmuch as the time is short, and the options in danger of loss, a receiver be appointed, with authority, upon being furnished by complainant with the money therefor, to pay for the options given him or for similar options given by other persons to Chew, Fisher, or the company, and to take title to the lands optioned as receiver, and to hold the same subject to the final order of the court, etc. He also prays for an injunction against the defendants enjoining them from changing the existing status of the property or aliening

the same, etc. On the same day a temporary injunction was awarded, and a temporary receiver appointed. Upon hearing the rule to show cause why injunction should not issue, the court, on April 22, 1901, entered an order, of which the following is a copy: "An examination of the bill and the affidavits, with the return to the rule and the affidavits accompanying the same, discloses that the immediate damage which the complainant dreads is that the options which he holds upon the land on both sides of the Savannah river, and which will expire in May next, will be lost to him. These options were delivered by him to Chew, trustee, and are now held by the Twin City Power Company. The rest of the relief which he seeks, to wit, the construction of the agreement and his rights thereunder, is important, but does not require immediate adjudication, even were such adjudication possible in the present state of the pleadings. It is therefore ordered that the defendant the Twin City Power Company secure to the complainant the performance of the agreement of the 1st of June, and to this end that it enter into bond, with surety to be approved by the judge of this court, in the penal sum of $15,000, with the condition that it preserve and keep in full force and effect each and every of the options delivered to Chew, trustee, by the complainant under the agreement of June 1, 1900, and that it shall in every respect keep and perform the provisions of said agreement as construed by the order and decree of this court upon the final hearing of this case; that upon the execution and approval of the said bond the temporary restraining order heretofore issued be rescinded and the receivership dissolved." Bond, in accordance with this order, was filed by the defendant Twin City Power Company with American Surety Company of New York, as surety, and, as the form of the bond becomes important in view of the final judgment of the court, it is here reproduced:

"The United States of America, District of South Carolina. In the Circuit Court, Fourth Circuit. In Equity.

"Thomas Barrett, Jr., vs. The Twin City Power Company et al.

"Know all men by these presents, that the Twin City Power Company, a corporation under the laws of the State of South Carolina, as principal, and American Surety Company of New York, a corporation under the laws of the State of New York, and having an office at No. 100 Broadway, in the city of New York, as surety, are held and firmly bound unto Thomas Barrett, Jr., of the city of Augusta, in the State of Georgia, in the sum of fifteen thousand dollars, good and lawful money of the United States, to be paid to the said Thomas Barrett, Jr., his executors, administrators or assigns; for which payment, well and truly to be made, the said obligors do bind themselves and their successors, jointly and severally, firmly by these presents.

"Sealed with the seals of said obligors and dated at New York city, New York, this sixth day of May, A. D., 1901.

"The condition of the above obligation is such that if the above bound Twin City Power Company shall preserve and keep in full force and effect each and every of the options delivered to Chew, trustee, by the said Thomas Barrett, Jr., the complainant in the above stated case, under the agreement of June 1, 1900, attached to the bill of complaint herein as Exhibit A, and shall in every respect keep and perform the provisions of said agreement as construed by the order and decree of the above stated court upon the final hearing of the above stated case, then the above obligation is to be void; otherwise, to remain in full force and virtue.

"Twin City Power Company,
"D. M. MacKaye, Treasurer. [Seal.]
"American Surety Company of New York,
"By David B. Sickels, Vice-President. [Seal.]
"Cortlandt S. Vanrensselaer, Attorney.

"Signed, sealed and delivered in the presence of:
"Eugene A. Davis."

Answers were filed by defendants Twin City Power Company, Fisher and MacKaye, issue was joined, testimony taken, and the court upon final hearing decided the cause in favor of Barrett, and rendered judgment for $15,000

in favor of Barrett against Twin City Power Company and American Surety Company, surety upon the bond aforesaid.

From this decree Twin City Power Company appealed, assigning the following errors: "First. Because it appears by the bill of complaint, as well as by all the other pleadings and proceedings herein, and by the evidence herein, that the complainant had a plain, adequate, and complete remedy at law; and this objection, having been duly taken by this defendant by its answer, the complainant's bill should have been dismissed. Second. Because the evidence shows that this defendant has not defaulted in the performance of the contract of June 1, 1900 (Exhibit A of bill), on its part either (a) in failing to deliver the bonds within the time limited, or (b) in failing to deliver bonds of the character contracted for. Third. Because it does not appear from the evidence, or the admissions of the answer, or both, that the Twin City Power Company is indebted to Thomas Barrett, Jr., the complainant, in the sum of fifteen thousand dollars, with interest from February 1, 1901, as adjudged by said decree, or in any other fixed or liquidated amount. Fourth. Because the American Surety Company is no party to this suit, and therefore no judgment against it herein is authorized. Fifth. Because, if the complainant was entitled to a decree herein, such decree should be for his said fifteen options, or the value thereof in money, and such value should have been ascertained and fixed by the court, which the court failed and omitted to do."

B. L. Abney and J. S. Muller, for appellant.

Frank H. Miller and D. S. Henderson (Wm. K. Miller, on the brief), for appellee.

Before MORRIS, WADDILL, and KELLER, District Judges.

KELLER, District Judge, (after making the foregoing statement). The first error assigned is that the court did not have jurisdiction, because complainant had a plain, adequate, and complete remedy at law. It is not enough to oust the jurisdiction of equity that a plaintiff may have a nominal or appropriate remedy at law, unless the legal remedy is as adequate, complete, and effectual as can be afforded in equity. In Boyce v. Grundy, 3 Pet. 213, 7 L. Ed. 655, decided in January, 1830, Mr. Justice Johnson, speaking for the Supreme Court, says:

"This court has often been called upon to consider the sixteenth section of the judiciary act of 1789, and as often, either expressly or by the course of its decisions, has held that it is merely declaratory, making no alteration whatever in the rules of equity on the subject of legal remedy. It is not enough that there is a remedy at law. It must be plain and adequate, or, in other words, as practical and efficient to the ends of justice and its prompt administration as the remedy in equity."

This principle has been reaffirmed in Drexel v. Berney, 122 U. S. 241, 252, 7 Sup. Ct. 1200, 30 L. Ed. 1219; Kilbourn v. Sunderland, 130 U. S. 514, 515, 9 Sup. Ct. 594, 32 L. Ed. 1005; Gormley v. Clark, 134 U. S. 349, 10 Sup. Ct. 554, 33 L. Ed. 909; Allen v. Hanks, 136 U. S. 311, 10 Sup. Ct. 961, 34 L. Ed. 414; Rich v. Braxton, 158 U. S. 406, 15 Sup. Ct. 1006, 39 L. Ed. 1022. "The absence of a plain and adequate remedy at law affords the only test of equity jurisdiction, and the application of this principle to a particular case must depend altogether upon the character of the case as disclosed in the pleadings." Watson v. Sutherland, 5 Wall. 74, 79, 18 L. Ed. 580.

Tested by these rules, let us see what were the circumstances surrounding the plaintiff at the time he filed this bill. These cannot be

better stated than they are in the opinion of the learned circuit judge who tried the case below. He says:

"When the bill was filed, the complainant was in this position: He had been induced to abandon the enterprise in which he had entered of developing the water power of the Savannah river above Augusta, and had surrendered that to Chew and his associates, his competitors in that enterprise. He had transferred to them the options he had secured from landowners on each side of the river, which options were of essential necessity to the enterprise. When the time for the fulfillment of the contract between them arrived, a grave difference was found to exist. The defendant had agreed to deliver bonds of the amount of $15,000, secured by a first mortgage on the property, the entire issue being not greater than 80 per cent. of the value of the property, with the privilege of paying in lieu of such delivery $15,000 in cash. Efforts were made to adjust this difference until March 28, 1901, which failed. The options all expired on 1st May thereafter. Complainant desired the fulfillment of the contract according to its terms or the return to him of his options. It was a matter of impossibility to obtain any adjudication upon the differences of the parties in this contract at any time before May 1st. And in the meantime, if these options were allowed to expire, the injury to complainant would be irreparable. It was of the last importance, therefore, to him that the status quo be preserved. And this could not possibly be effected except by the use of the powers of a court of equity in the issue of an injunction and the appointment of a receiver, who could protect and conserve the interest of both parties. The statutory remedies provided by the Code of South Carolina could not oust the jurisdiction of a court of equity. The remedy at law which could prevent the exercise of equitable jurisdiction was one which was in existence when the judiciary act of 1789 was passed. McConihay v. Wright, 121 U. S. 206 [7 Sup. Ct. 940, 30 L. Ed. 932]. Even if this statutory remedy could give relief, it does not oust the jurisdiction of the federal court. Smyth v. Ames, 169 U. S. 466 [18 Sup. Ct. 418, 42 L. Ed. 819]."

From these considerations we are of opinion that the first assignment of error cannot be sustained.

As to the questions raised by the second assignment of error, namely, that there had been no breach of contract on the part of defendant, we reach the same conclusion as was arrived at by the learned judge below. The defendant was entitled to release itself of liability under the contract with Barrett in any one of three ways: First, by delivering to Barrett, on or before February 1, 1901, bonds of the character specified in the contract itself to the amount of $15,000; second, by paying to Barrett in cash the sum of $15,000 on February 1, 1901; third, by forfeiting the $5,000 already paid upon the options, annulling the contract, and returning the options to Barrett on February 1, 1901. The defendant did none of these things. On December 19, 1900, the defendant, through Chew, its vice president and general manager, wrote Barrett a letter, in which its obligation was fully recognized, and in the course of the letter said: "Should we fail in getting the bonds ready, you will be paid as per agreement, as that is our intention to comply with all contracts made and approved of by this company." On January 25, 1901, the defendant, through MacKaye, its treasurer, first notified Barrett that it would be unable to deliver the bonds at the date specified in the contract, and proposed to substitute an order on the treasurer thereof. On January 28, 1901, Barrett replied, peremptorily declining any extension of time for the actual delivery of the bonds, and demanding cash if the bonds were not ready by January 31, 1901 (should be February 1, 1901). On

January 30, 1901, and after receipt of Barrett's letter, such an order was sent to Barrett, and the fact that he did not immediately return it is made the basis of a claim that he is now estopped from denying that he received this order in satisfaction of the terms of the contract. This contention has no foundation. Barrett had already declined such a proposition, and demanded his money, and he was under no obligation to pay any attention whatever to the letter of January 30, 1901, or its inclosure. It was a case in which Barrett asked for bread and they gave him a stone. He had stipulated for bonds of a certain character delivered at a time certain. They tendered an order for bonds of a character unspecified, not then in existence, and deliverable at an uncertain time in the future. This, under no circumstances, could be a delivery such as was contemplated by the contract. Besides, the bonds, when they came into existence, were not at all of the character specified in the contract. Barrett, in his contract, specified that they should be first mortgage bonds of an issue which should not exceed 80 per cent. of the amount "paid, laid out, and expended in the purchase of the various tracts of land and the land covered by these options, and in the development of said water power." These bonds were part of an issue of $1,000,000, which, by the terms of the mortgage, were to be certified and delivered by the trustee as the board of directors might, from time to time, by resolution, direct; and the promise of the company, verbally or in writing, to Barrett, that the bonds would not be placed on the market more rapidly than contemplated by the contract, furnished no sort of security or stability to the bonds themselves. They were, moreover, incumbered by unusual terms and conditions, such as that relieving the stockholders from liability for unpaid subscriptions. The defendants neither tendered the cash mentioned in the contract nor did they annul the contract, and return the options. On the contrary, when Barrett, on March 22, 1901, went to New York and demanded of Chew, individually and as trustee for Fisher, the return of his options, their return was refused, and the next day formal transfer was made of the options to Twin City Power Company, showing the deliberate intent not to return the options to Barrett. There is no merit in the second assignment of error.

As to the third assignment of error, it seems only necessary to look at the contract of June 1, 1900, to ascertain the value fixed upon the options by the parties themselves. This appears to have been $20,000, payable $5,000 at date of contract and $15,000 in eight months thereafter, either in cash or bonds, at the option of purchaser; in default of either form of payment, the contract to be annulled, and options returned, and the advance payment to be forfeited.

With regard to the fourth assignment of error, to-wit, that "the American Surety Company is no party to this suit, and therefore no judgment against it herein is authorized," we are also of opinion that the contention cannot be sustained. The bond upon which the judgment was founded was voluntarily given by the defendant, Twin City Power Company, in the progress of the cause to recover the possession of the property theretofore placed in the hands of a receiver by the court, and provided in distinct terms that it was to secure the

performance of the provisions of the agreement of June 1, 1900, as construed by the court upon the final hearing of the cause. The bond given for the purpose of releasing the property of the company from the hands of the receiver was one which the court had inherent power to take, and, as a necessary consequence, has power to enforce. A court of equity has inherent power to impose conditions upon granting or dissolving injunctions, appointing and discharging receivers, and the like. See Kerr on Injunctions, 212, and High on Receivers, § 124, where it is said that, where the court refuses a receiver upon condition of defendant executing a bond to account as receiver for all goods and money which had come into his possession, and to pay them over pursuant to the decree of the court, such a bond will be deemed good as a common-law obligation, and the obligor, although not considered as a receiver or officer of the court, stands in the light of one who, for a personal accommodation, has assumed a legal responsibility, and after receiving the benefits of the obligation he is estopped from denying its legality. See, also, Ferguson v. Glidewell (Ark.) 2 S. W. 711.

The court did not err in decreeing against American Surety Company as surety of Twin City Power Company. The bond given was in the nature of a forthcoming bond, and as such has the force of a judgment.

The fifth assignment of error may be disposed of by reference to what has been said under the head of the third assignment. The court, under the evidence, did necessarily find the value of the options to be $20,000, the value put upon them by both parties, and decreed for this sum, less the $5,000 already paid.

There being no error in the decree complained of, the same is accordingly affirmed.