## ZENITH CARBURETOR CO. v. STROMBERG MOTOR DEVICES CO.
## STROMBERG MOTOR DEVICES CO. v. ZENITH CARBURETOR CO.

(Circuit Court of Appeals, Seventh Circuit. January 4, 1921.)

Nos. 2797, 2798.

1. **Injunction ⟺44—Court in equitable suit for determination of right can restrain disposition of assets.**

   The rule that disposition of assets by a party will not be enjoined until after judgment and execution returned unsatisfied does not apply, where the court already had jurisdiction of the suit for equitable relief, where the complainant's right to some relief had been established, though the amount was undetermined, and where the fund affected may be in whole or in part a trust fund for which defendant must account.

2. **Equity ⟺39(2)—Can grant entire relief after obtaining jurisdiction.**

   After a court of equity has obtained jurisdiction it may give all the relief to which the party is entitled, though some of such relief could be recovered at law, and though an original bill could not be maintained for such relief.

3. **Patents ⟺305—Infringer not enjoined from paying royalties to foreign company.**

   Where a decree finding infringement and ordering an accounting had been rendered, the infringing defendant should not, in the exercise of the court's discretion, be enjoined from continuing the payment of royalties to a foreign company for the use of patents owned by that company, the nonpayment of which might drive defendant out of business and thereby prevent recovery by plaintiff.

4. **Patents ⟺305—Relative to right to enjoin payment of royalties out of country, corporations held distinct entities, though stockholders were the same.**

   A corporation organized under the laws of Michigan is a distinct entity in law from a French corporation, though all its stock was owned either by the French corporation or by stockholders thereof, so that such foreign ownership does not affect the right of the Michigan corporation to pay royalties for use of a patent to the French corporation as operating expenses, when sought to be enjoined on a decree against it for infringement.

5. **Patents ⟺305—Payment of dividends by infringer restrained pending accounting.**

   Where a decree finding infringement and directing an accounting had been rendered, and it appeared that all the stock of the defendant, a Michigan corporation, was owned by a French corporation or its stockholders, and that the Michigan corporation was paying large amounts in dividends to the parent company, the payment of such dividends can be enjoined pending the accounting, to preserve the assets for the payment of the amount found due.

Appeal and Cross-Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Suit for infringement of patent and for an accounting by the Stromberg Motor Devices Company against the Zenith Carburetor Company. From an order modifying a previous injunction restraining defendant from making payments to a foreign corporation pending the accounting, so as to permit the defendant to pay a part of the royalties, but not the balance of the royalties or the dividends, both parties appeal. Modified and affirmed.

Walter E. Oxtoby, of Detroit, Mich., and Edward Rector, of Chicago, Ill., for Zenith Carburetor Co.

Charles A. Brown, of Chicago, Ill., for Stromberg Motor Devices Co.

Before BAKER, ALSCHULER, and EVAN A. EVANS, Circuit Judges.

EVAN A. EVANS, Circuit Judge. This suit was brought by appellee to restrain appellant from infringing the Ahara patent, No. 684,662, and for damages. A decree sustaining the patent and ordering a reference to determine the amount due for past infringements was duly entered and subsequently modified and affirmed on appeal. 254 Fed. 68, 165 C. C. A. 478. The position of the parties and character of the two patents, the Ahara and Baverey patent, are fully described in the opinion in that case. The accounting before the master followed as a matter of course. While in progress, and before appellee had completed its introduction of evidence, it applied for and obtained an order restraining appellant from—

" * * * disposing of its assets by sending money beyond the jurisdiction of this court or sending to Société du Carburateur Zenith of France or to any one directly or indirectly connected with said French company, any funds, securities, money, goods or assets of defendant of any kind or description, for alleged royalties or to pay alleged debts or to reduce the assets of defendant which will be available to meet the judgment of the court herein, except by paying salaries, wages and material bills, etc., in the regular course of business. Leave is given to defendant to apply for a modification hereof."

An application was thereafter made to vacate this restraining order, which resulted in a partial modification; appellant being permitted to make certain royalty payments, hereinafter more specifically referred to, under the Baverey license contract. Both parties have appealed from this order.

Appellant is a Michigan corporation, whose stock is owned by a French corporation of a similar name that may be well called the parent or French company, and by the stockholders of such company. It was organized to conduct the Zenith carburetor business in the United States and enjoyed a remarkable growth. From a small corporation, into which the stockholders paid $10,000 in cash in 1911, it has developed into a large and prosperous company. The French company also enjoyed a large business in France and in other European countries, where it manufactured and sold the so-called Zenith carburetor, a carburetor in general use on many of the leading European cars. This company controlled other patents, which it considered extremely valuable. When appellant was organized, a contract was made between it and the parent company, by the terms of which a royalty was agreed upon, for the use of the Baverey and other patents. The trial judge, in modifying the original order said:

"On the 27th day of February, 1919, this court, on application of the plaintiff, restrained the defendant from disposing of assets by sending money beyond the jurisdiction of this court or by remitting royalties to the Société du Carburateur Zenith of France or from paying alleged debts, or in any way reducing its assets, except by paying salaries, wages, and material bills in the regular course of business. This order was made under quite unusual cir-

cumstances. It appeared that the defendant was owned by a French corporation of the same name, and that a large amount of money had been sent by defendant to the French company in payment of dividends and royalties on the Baverey patent, under which defendant is licensed. * * * Of course, the amount of the possible recovery cannot be determined on this motion. * * * In view of this uncertainty, the injunction should stand for the present, except so far as relates to a 5 per cent. royalty claimed to be due to Baverey. It appears that Baverey took out patents on his carburetor in France, the United States, and various other countries, and in 1910 assigned all these patents to the French company, receiving a royalty of 11 per cent. of the net selling returns, and that defendant was licensed by the French company subject to the same royalty. In 1914 this was reduced to 5 per cent. of the net sales. This royalty is a legitimate expense, and defendant should be permitted to pay it."

The original cash investment was $10,000, but further sums were paid by the stockholders into the company. In 1918 the capital stock of the company was increased to $320,000, and the French company conveyed to appellant a valuable piece of real estate as well as other tangible assets. When the injunctional order was made, appellant was paying the French company in royalties and dividends approximately $30,000 per month.

Appellant insists (a) that the court possessed no jurisdiction to make the order complained of; and (b) that it was an abuse of discretion to grant the injunctional order. Appellee complains because the court modified the original order.

[1] Contending that the court is without jurisdiction to enter the order, appellant relies on those cases, of which there are many, holding that a plaintiff, who has instituted an action upon a claim, but who has not reduced it to judgment, cannot obtain an order restraining the debtor from disposing of its assets. In all such actions the court requires that the plaintiff's claim be reduced to judgment and that execution be returned nulla bona. The present suit is distinguishable from the class of cases thus referred to in at least three respects:

(a) The instant suit has proceeded to a decree, final so far as the question of liability is concerned. National Brake & Electric Co. v. Christensen, 258 Fed. 880, 169 C. C. A. 600. True, the amount is still unascertained, and execution cannot issue, because that amount must first be determined. Appellee, nevertheless, is in the position of a creditor the validity of whose claim has been established by a judgment of the court.

(b) A second reason for distinguishing the present suit from the class of cases referred to is found in the fact that this is a suit of which a court of equity originally took jurisdiction. Having acquired jurisdiction for reasons in no way connected with the relief here sought, it will do complete justice. Quite different is an action at law, where equitable relief is sought pending the trial without showing that plaintiff has exhausted all its legal remedies. In the one suit, equity has already taken jurisdiction. In the other, a creditor is in a court of law, but asking for equitable relief without showing those facts (namely, that all remedies at law have been exhausted) upon which alone a court of equity will assume jurisdiction.

[2] The rule which is at the bottom of the decisions heretofore referred to is based on the maxim that equity will not intervene until claimant has exhausted all his remedies at law. Hence the requirement of a judgment and an execution returned unsatisfied. This rule is, in the class of cases referred to, applied to actions at law, and with such application there can be no quarrel. But the instant suit is one in equity, and another rule or an exception to this rule is applicable. For when plaintiff has established a right to equitable relief, the court will not only grant that relief, but all other relief essential to a complete adjustment of the subject-matter between the parties, although it is thereby required to grant relief obtainable at law, and which, if the object of an independent action, could be obtained at law alone. 16 Cyc. 106; Camp v. Boyd, 229 U. S. 530, 552, 33 Sup. Ct. 785, 57 L. Ed. 1317. Likewise, relief of an equitable character may be incidentally obtained when an original bill would not lie for such relief. 16 Cyc. 108. And a court of equity which has obtained jurisdiction of a controversy on any ground or for any purpose will retain such jurisdiction for the purpose of administering complete relief and doing entire justice without respect to the subject-matter. Twin City Power Co. v. Barrett, 126 Fed. 302, 61 C. C. A. 288. Frequent instances of the application of these rules of equity may be found in divorce suits where restraining orders are entered immediately upon the beginning of the suit (Smith v. Waalkes, 109 Mich. 16, 66 N. W. 679), and in foreclosure proceedings where receivers are not infrequently appointed before a decree is entered.

(c) Finally, the present suit is distinguished from the class of cases before referred to, because the fund which appellee seeks to hold may be in part or in whole a trust fund from which appellant must account to appellee for lost profits.

The question of discretion, however, presents a different issue. A court of equity may have jurisdiction to make the order, but it by no means follows that the relief sought will be granted. Should the court have restrained appellant from paying royalties and dividends?

[3] First, as to royalties: It appears that, when appellant was organized under the laws of Michigan, it secured from the parent company a license to use the Baverey patents. By the terms of this contract appellant was obligated to pay as royalty 20 per cent. of the sales in the United States. The agreement was made in good faith and long before any suit with appellee was contemplated. Later the royalty was reduced, the parties again negotiating in good faith, hoping by the change to increase sales and bring about results mutually advantageous. Baverey also reduced his royalty charge to the parent company. At the time the injunctional order was entered, the parent company was paying Baverey 5 per cent. of the sales in the United States and appellant was paying the parent company 10 per cent. of its sales.

Judge Sanborn at first enjoined the payment of all moneys to the parent company, but by the second order permitted as a partial payment under the license contract such sums as equaled the amount the parent company was required to pay Baverey—namely, 5 per cent.

Of this appellee complains, while appellant insists its obligations to pay its full royalty should not have been enjoined.

We agree with appellant. It was as necessary and as proper to permit appellant to meet this obligation as it was to authorize the payment of the other necessary operating expenses. We cannot say that the royalty payments are not necessary to the future conduct of the business. It may be that failure to pay the royalties as they become due will forfeit appellant's right to make and sell carburetors provided with the features covered by the patents upon which royalties are paid, and that without these privileges appellant would be so crippled that it would be unable to continue in business. Such a result might furnish appellee with more satisfaction than the payment of its claim, but it is exactly what the court will not lend its aid to accomplish. Moreover, the continuance of the so-called license contract may, in the last analysis, make the collection of appellant's judgment more certain. Certainly this court will not aid one litigant in eliminating a formidable rival as a business competitor.

[4] But appellee insists that, as the parent company and its stockholders are holders of the capital stock of appellant, a situation exists that justifies its contention that no moneys should be paid—certainly nothing more than the 5 per cent. of gross sales which the parent company is required to pay Baverey. In so urging its position, appellee overlooks the facts that the two companies are entirely separate entities—distinct corporations. Appellant is a Michigan corporation, subject to the laws of that state, and subject to the taxes which may be imposed upon it by the state of Michigan and the United States. There is no privity between it and Baverey. The extensive use of carburetors in the United States may well have resulted in such obligations as to make their fulfillment impossible, unless the parent company receives its payment from appellant. At any rate, we are unable to recognize mere similarity in stockholders, or one corporation's ownership of a large part of the stock of another corporation, as a basis, in a suit like this, for the abridgment of existing contracts between such corporations, contracts of long standing and antedating appellee's claim.

[5] As to dividends: A different situation is presented when we come to consider dividends. Here the amount that may be declared is uncertain. They may be declared in such sums as to defeat appellee's judgment. Their declaration is not essential to the continued operation of appellant's business. The situation is unusual, as the District Judge pointed out. Appellee's asserted claim far exceeds the amount of appellant's property. Liability for some amount has been judicially established. The measure of liability for each infringement is not easily stated. Upon the showing thus far made it would be impossible to attempt to determine it.

Moreover, it is more or less a matter of discretion, which must first be exercised by the trial judge. Any injustice or unforeseen injury may be promptly corrected by the District Judge. Moreover, a bond protecting appellee may at any time be presented and a reasonable dividend can be paid. Considering all these factors as we are required

to do on this appeal, we cannot say there was an abuse of discretion in restraining the payment of dividends.

The order is modified, so as to permit all payments of royalties, not exceeding 10 per cent. of appellant's sales in the United States, due or to become due, from appellant to the parent company, under contract between them for royalties, and, as modified, is affirmed. Appellant is to recover costs on this appeal.